**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE VERITAS SOFTWARE CORP. SECURITIES LITIGATION | ) ) ) ) | Case No: 04-CV-831 (SLR) Consolidated Action |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

OF COUNSEL:
Nina F. Locker, Esquire
Peri Nielsen, Esquire
WILSON SONSINI GOODRICH & ROSATI, PC
650 Page Mill Road
Palo Alto, California 94304-1050
Tel: (650) 493-9300

Peter J. Walsh, Jr. (DSB ID No. 2437)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19801
Tel: (302) 984-6000
Email: pwalsh@potteranderson.com

*Attorneys for Defendants VERITAS
Software Corporation, Edwin J. Gillis,
Gary L. Bloom and John Brigden*

Dated July 20, 2005

690685v3/28298

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

SUMMARY OF ARGUMENT ................................................................................ 2

SUMMARY OF ALLEGATIONS ........................................................................... 6

    VERITAS ...................................................................................................... 6

    The Second Quarter Guidance ..................................................................... 6

    The July 6, 2004 Press Release .................................................................... 7

    The Original Complaints .............................................................................. 9

    The Consolidated Amended Class Action Complaint ................................. 9

ARGUMENT ......................................................................................................... 10

I.      APPLICABLE LEGAL STANDARDS ................................................. 10

II.    PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE STATEMENT
       REGARDING THEIR FORECAST ALLEGATIONS ........................ 10

III.   PLAINTIFFS FAIL TO PLEAD ADEQUATELY A CLAIM BASED ON
       VERITAS' GUIDANCE FOR THE SECOND QUARTER 2004 ...................... 12

       A.    Plaintiffs Fail To Plead Facts Demonstrating That VERITAS'
              Guidance For Q2 2004 Was False When Made ...................................... 16

       B.    Plaintiffs Fail To Plead Adequately That Defendants "Actually
              Knew" The Q2 2004 Guidance Was False When Made ......................... 22

IV.   PLAINTIFFS FAIL TO PLEAD ADEQUATELY LOSS CAUSATION
       WITH RESPECT TO THEIR ACCOUNTING CLAIMS ................................ 24

V.    PLAINTIFFS FAIL TO PLEAD ADEQUATELY A CLAIM BASED ON
       ALLEGED IMPROPER REVENUE RECOGNITION ..................................... 27

VI.   PLAINTIFFS FAIL TO PLEAD ADEQUATELY FACTS RAISING A
       STRONG INFERENCE OF FRAUDULENT INTENT ON THE PART
       OF ANY OF THE DEFENDANTS ................................................................. 31

CONCLUSION ..................................................................................................... 36

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*In re AFC Enters. Inc. Sec. Litig.*, 348 F. Supp. 2d 1363 (N.D. Ga. 2004) .......................23

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) ................................... *passim*

*In re Advanta Corp. Sec. Litig.*, No. 97-CV-4343, 1998 WL 387595
    (E.D. Pa. July 9, 1998), *aff'd*, 180 F.3d 525 (3d Cir. 1999) ...........................17, 23

*In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137 (3d Cir. 2004).................................... *passim*

*In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542 (8th Cir. 2004) .........................................21

*In re Best Buy Co., Inc. Sec. Litig.*, No. 03-6193, 2005 U.S. Dist. LEXIS
    6427 (D. Minn. April 12, 2005) ..............................................................................14

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..........................7

*California Public Employees' Retirement System v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004).............................................................................. *passim*

*Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226 (D. Mass. 1999) .............................28

*In re Champion Enterprises. Inc. Sec. Litig.*, 144 F. Supp. 2d 848
    (E.D. Mich. 2001), *aff'd,* 346 F.3d 660 (6th Cir. 2003) ..................................13, 14

*D.E. & J. Ltd. Partnership v. Conaway*, Nos. 03-2334, 03-2417,
    *2005* WL 1386448 (6th Cir. June 10, 2005) ........................................................26

*Dura Pharmaceuticals, Inc. v. Broudo v.*, 125 S. Ct. 1627 (2005)........................24, 25, 26

*Freed v. Universal Health Services, Inc.*, No 04-1233, 2005 WL 1030195
    (E.D. Pa. May 3, 2005) ....................................................................................19, 29

*In re FVC.COM Sec. Litig.*, 136 F. Supp. 2d 1031 (N.D. Cal. 2000), *aff'd*,
    2002 WL 465161 (9th Cir. 2002) ...........................................................................33

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228 (3d Cir. 2004) ...........................35

*Gavish v. Revlon, Inc.*, No. 00 Civ. 7291, 2004 WL 2210269
    (S.D.N.Y. Sept. 30, 2004)..........................................................................12, 29, 30

*Harris v. IVAX Corp.*, 182 F.3d 799 (11th Cir. 1999) .....................................................14

*In re Initial Public Offering Sec. Litig.*, Nos. MDL 1554, 21 MC 92, 2005
    WL 1529659 (S.D.N.Y. Jun. 28, 2005) ..................................................27

*In re K-Tel International, Inc. Sec. Litig.*, 300 F.3d 881 (8th Cir. 2002) .........................28

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) .................................................36

*Karacand v. Edwards*, 53 F. Supp. 2d 1236 (D. Utah 1999).............................13, 22

*In re Keyspan Corp. Sec. Litig.*, 01 CV 5852, 2003 U.S. Dist. LEXIS
    20964 (E.D.N.Y. Nov. 21, 2003).........................................................23

*Lipton v. PathoGenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002)...........................34

*In re Loewen Group Inc. Sec. Litig.*, No. 98-6740, 2003 WL 22436233
    (E.D. Pa. July 16, 2003).....................................................................27

*In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152 (N.D. Ill.
    2004) .............................................................................................14, 29

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) ...............................7

*In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551 (D.N.J. 2001) ............16, 35

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .................................................17

*In re NUI Sec. Litig.*, 314 F. Supp. 2d 388 (D.N.J. 2004) ...........................26, 35

*In re Parmalat Sec. Litig.*, No. 04 MD 1653, 2005 U.S. Dist. LEXIS
    12553 (S.D.N.Y. Jun. 28, 2005) ..........................................................27

*In re Party City Sec. Litig.*, 147 F. Supp. 2d 282 (D.N.J. 2001).................17, 21, 34

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001).................................................23

*In re SCB Computer Technology, Inc. Sec. Litig.*, 149 F. Supp. 2d 334
    (W.D. Tenn. 2001)............................................................................28

*SEC v. Healthsouth Corp.*, 261 F. Supp. 2d 1298 (N.D. Ala. 2003) .................34

*Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000) .........................24, 26

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109, 2000 U.S.
    Dist. LEXIS 15369 (N.D. Cal. Sept. 29, 2000) ....................................12

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002) .........................23

*Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102 (N.D. Cal. 2003) ............34

*Wilson v. Bernstock*, 195 F. Supp. 2d 619 (D.N.J. 2002) ...............................11

*Winer Family Trust v. Queen*, No. 03-4318, 2005 U.S. Dist. LEXIS 652
    (E.D. Pa. Jan. 13, 2005) ......................................................................22

## STATUTES

15 U.S.C. § 78u-4(b)(1)(B)............................................................................11

15 U.S.C. § 78u-4(b)(2)...........................................................................11, 31

15 U.S.C. § 78u-4(b)(3)(A).........................................................................11

15 U.S.C. § 78u-5(c)....................................................................................12

15 U.S.C. § 78u-5(c)(1)(A)(i).......................................................................14

15 U.S.C. § 78u-5(c)(1)(B)(i).......................................................................22

15 U.S.C. § 78u-5(c)(2)(B)(i).......................................................................14

15 U.S.C. § 78u-5(e)....................................................................................13

15 U.S.C. § 78u-5(i)......................................................................................2

15 U.S.C. § 78u-5(i)(1).................................................................................13

## RULES

17 C.F.R. §241.10b5-1(c)(1)(C)...................................................................28

Fed. R. Civ. P. 9(b)...................................................................................1, 10

Fed. R. Civ. P. 12(b)(6)..................................................................................1

## MISCELLANEOUS

S. Rep. No. 104-98, 1995 U.S.C.C.A.N. 679 (1995)......................................25

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff Paul Kuck filed this purported securities class action complaint against VERITAS Software Corporation ("VERITAS"), Gary L. Bloom and Edwin J. Gillis on July 7, 2004, one day after VERITAS announced that it expected to fall short of its previously issued revenue forecast for the quarter ended June 30, 2004.

Several related lawsuits were filed shortly thereafter, and, on March 3, 2005, this Court consolidated these lawsuits and appointed Tay Siew Choon and Mark Leonov as Co-Lead Plaintiffs.  On May 27, 2005, plaintiffs filed the Consolidated Amended Class Action Complaint ("CAC") against VERITAS, Mr. Bloom, Mr. Gillis and John Brigden (collectively, "defendants").  In addition to the original forecast allegations, plaintiffs' CAC extends the putative class period back a whole year to claim that each of VERITAS' financial statements filed between April 23, 2003 and April 21, 2004 was false because defendants had recognized revenue improperly on sales transactions.

Defendants hereby move to dismiss the CAC for failure to satisfy the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 (the "Reform Act") and Fed. R. Civ. P. 9(b) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### SUMMARY OF ARGUMENT

1.      With respect to plaintiffs' forecast allegations, both the Reform Act and the "bespeaks caution" doctrine shield defendants from liability for forward-looking statements accompanied by meaningful cautionary language.  VERITAS' forecasts for the June 2004 quarter were forward-looking because they were "a projection of revenues." 15 U.S.C. § 78u-5(i).  VERITAS accompanied these forecasts with warnings that its quarterly revenue and earnings could be affected by "the possibility that our customers may cancel, defer or limit purchases as a result of reduced information technology budgets or weak and uncertain economic and industry conditions."  This cautionary language amply warned investors of the precise risks that ultimately materialized in the June 2004 quarter, namely weakness in enterprise software sales.  Thus, defendants are shielded from liability for issuing these forecasts.

2.      Plaintiffs also have failed to adequately allege that VERITAS' forecasts were false when made.  Plaintiffs premise their allegations almost entirely on post-class period statements made in a July 27, 2004 securities analyst conference call in which Mr. Bloom explained the factors he believed contributed to the quarterly shortfall.  Plaintiffs allege, without basis, that defendants were aware of these factors and knew they rendered the forecasts false at the time they were issued.  Plaintiffs' contentions are nothing more than fraud-by-hindsight pleading, a tactic the Third Circuit has repeatedly rejected as a basis on which to claim securities fraud.  Plaintiffs also rely on the vague accounts of a few alleged former employees to substantiate their forecast allegations, but none of their accounts is linked to the reasons for the revenue shortfall.  Not only do these individuals fail to support plaintiffs' theory of fraud, but also none of them is alleged to have held a

position which would allow him or her to obtain information relating to VERITAS'
revenue projections.

3.    Instead of facts demonstrating "actual knowledge" on the part of
defendants – the scienter standard applicable to forward-looking statements – plaintiffs
impermissibly allege scienter by virtue of defendants' positions and purported access to
information.  Numerous courts, including those in the Third Circuit, have rejected this
generalized allegation as a basis on which to plead securities fraud.  Further, given that
none of the individual defendants sold any stock during the three-month period between
the day guidance for the quarter ended June 2004 was first disseminated and the day the
quarterly shortfall was announced, no motive has been or could be pleaded.

4.    With respect to the allegations regarding revenue recognition, plaintiffs
fail to plead the required element of loss causation.  The Supreme Court recently
confirmed what this Circuit has already recognized: to state a securities claim under
Section 10(b), plaintiffs must allege a proximate, causal connection between the
purported misrepresentation and the subsequent decline in the price of a stock.  Plaintiffs
contend that VERITAS' financial statements were false because they contained revenue
from contracts which were either unsigned or lacked essential terms.  Plaintiffs, however,
allegedly incurred their losses as a result of the July 6, 2004 announcement of the
quarterly shortfall.  This announcement did not address revenue recognition, let alone the
accuracy of VERITAS' prior financial statements.  Plaintiffs' losses, therefore, could not
have been caused by any alleged improper revenue recognition as a matter of law.
Plaintiffs' failure to plead loss causation disposes of their accounting allegations in their
entirety.

5.    Plaintiffs' revenue recognition allegations also fail to satisfy the Reform Act's heightened pleading requirements or Rule 9(b).  Plaintiffs fail to plead any specific dates, names, transactions or even the amount by which revenue was allegedly overstated.  Plaintiffs rely principally on the account of an alleged former employee in the legal department who left VERITAS in 2003.  This individual claims that Mr. Brigden, the General Counsel, approved contracts that had not been signed or which lacked essential terms, knowing they would be recognized as revenue.  Plaintiffs fail to allege this individual's job title, the nature of his or her responsibilities, or any basis from which to infer that he or she would have reliable information relating to the consequences of Mr. Brigden's review or the timing of revenue recognition.  Moreover, plaintiffs cannot satisfy the pleading requirements with this individual's account since he or she fails to allege the name of a single contract whereby revenue was recognized absent a required signature or material term.

6.    Plaintiffs also fail to allege facts raising a strong inference that defendants acted with deliberate recklessness in recognizing revenue.  Plaintiffs fail to allege a basis on which this individual could have knowledge of what Mr. Brigden knew when he supposedly approved these unspecified contracts.  Rather, plaintiffs attempt to satisfy their statutory obligation to allege scienter with particularity by pointing to stock sales executed in 2003 and early 2004 by the other defendants.  Mr. Brigden, however, did not sell any VERITAS stock.  This alone negates any inference of fraudulent intent.  In addition, plaintiffs fail to allege that Messrs. Bloom's and Gillis's sales were unusual or suspicious in timing or amount.  Indeed, Mr. Bloom sold only 1.71% of his total stockholdings (including stock options exercisable within 60 days), and Mr. Gillis sold

34% of his total stockholdings.   VERITAS publicly disclosed, however, that both individuals had entered into pre-designed 10b5-1 stock trading plans, the existence of which negates an inference of fraudulent intent as a matter of law.

In light of the foregoing, discussed in greater detail below, defendants respectfully request that the CAC be dismissed.

## SUMMARY OF ALLEGATIONS

**VERITAS**

VERITAS is headquartered in Mountain View, California and provides storage management software for data protection, application availability and disaster recovery. ¶7.[1]   VERITAS is one of the ten largest software companies in the world.  *Id.*  VERITAS' annual revenue in 2003 was $1.7 billion. ¶37.

Gary L. Bloom has been VERITAS' Chief Executive Officer since November 2000. ¶8.  Edwin J. Gillis has been the Chief Financial Officer since November 2002. ¶9.  John Brigden has been the Senior Vice President, General Counsel and Secretary since November 2001. ¶10.

**The Second Quarter Guidance**

On April 21, 2004, VERITAS announced that it had earned revenue of $487 million for the quarter ended March 31, 2004. ¶34.  It also projected for the quarter ended June 30, 2004 (the "Second Quarter 2004") that it would earn between $490 and $505 million in revenue and $0.21 to $0.23 earnings per share ("EPS"). *Id.*  VERITAS reiterated this guidance on May 5, 2004 during a conference call with securities analysts and on June 14, 2004 in a press release. ¶¶36-37.

At the time VERITAS disseminated this guidance, it warned investors in its public filings that its "revenue is difficult to forecast and is likely to fluctuate from quarter to quarter due to many factors outside of [its] control.  Any significant revenue

---

[1]   Unless otherwise noted, cites denoted as "¶__" refer to paragraphs in the Consolidated Amended Class Action Complaint.  Cites reflected as "Ex. __" refer to exhibits attached to the Declaration of Peter J. Walsh, Jr. ("Walsh Decl.").

shortfall or lowered forecasts could cause the market price of our securities to decline substantially." According to VERITAS, factors that could affect its revenue included "the possibility that our customers may cancel, defer or limit purchases as a result of reduced information technology budgets or weak and uncertain economic and industry conditions." *See* Q3 2003 10-Q at 45; 2003 10-K at 39, Exs. A, B.[2]

**The July 6, 2004 Press Release**

On July 6, 2004, after the Second Quarter 2004 ended, VERITAS announced that it expected its revenues to be $475 to $485 million. ¶44; Ex. H. This range was just $5 million short of the low end of the range previously predicted ($490 to $505 million). ¶¶34, 36-37. According to Mr. Bloom, VERITAS' results were "impacted primarily by weakness in [] U.S. enterprise sales." Ex. H. He stated:

> As we have indicated previously, software license orders are generally concentrated in the later part of the third month of the quarter. At the end of the June quarter, our anticipated order flow weakened, contributing to lower-than-expected license revenues.

*Id.*

On July 27, 2004, VERITAS held a conference call with securities analysts. ¶43; Ex. K. During this call, Mr. Bloom elaborated on the factors that may have affected information technology ("IT") spending in the U.S. and, thus, VERITAS' quarterly results. These factors included: (1) "customer buying patterns in enterprise accounts

---

[2]    In deciding this motion to dismiss, this Court may consider documents explicitly referred to in the CAC or which are integral to the CAC. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). In addition, this Court may consider matters of public record, including VERITAS' filings with the Securities and Exchange Commission ("SEC"). *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (court may take judicial notice of SEC filings, press releases and stock prices). *See also* Defendants' Request For Judicial Notice.

became more cautious during second quarter, leading to longer sales cycles and the smaller average deal size";[3] (2) management and IT departments were focused on certification deadlines and spending associated with Sarbanes-Oxley 404 implementations, rather than on new IT spending; and (3) VERITAS' restatement announced on March 15, 2004 had required time and attention from its executive team.[4] Ex. K at 3, 12. Mr. Bloom emphasized that the macro-economic factors relating to the U.S. enterprise business were principally to blame, pointing out that total deals over $100,000 had fallen to 201 in the Second Quarter 2004, from 246 and 286 in the two prior quarters, respectively.[5] *Id.* at 12.

---

[3]    Mr. Bloom noted that this pattern was also suggested by the announcements of shortfalls by other large software companies. Ex. K at 3; *see also* Ex. N (BMC Software, Inc. announced on July 7, 2004 that it had "experienced delays in customer purchasing decisions among larger accounts, primarily in the United States."); Ex. O (Siebel Systems, Inc. announced on July 7, 2004 that its "disappointing results were primarily due to unexpected delays in purchasing decisions by certain prospects and customers near the end of the quarter.").

[4]    On March 15, 2004, VERITAS announced that, as a result of an audit committee investigation, it had "identified certain accounting practices not in compliance with generally accepted accounting principles [GAAP] during 2002, 2001 and prior periods under the direction of former financial management.    These practices included the incorrect deferral of professional services revenue and the unsubstantiated accrual of certain expenses, which had a positive impact in some periods and a negative impact in others."  VERITAS also disclosed that "[t]he expected adjustments for 2003 are primarily a consequence of correcting errors from prior periods." Ex. F.

[5]    While plaintiffs contend that Messrs. Bloom and Gillis knew these facts prior to making the Second Quarter 2004 projections, plaintiffs fail to mention that the public knew them, as well.  On January 28, 2004, VERITAS publicly disclosed that it entered into 286 deals over $100,000 in the fourth quarter of 2003.  Ex. I at 6.  Similarly, VERITAS disclosed on June 14, 2004 that it had entered into 246 deals over $100,000 in the first quarter of 2004.  1Q 2004 10-Q at 23, Ex. C.  Nor do plaintiffs explain the significance of this decline, particularly in light of VERITAS' disclosure that its license transactions are subject to seasonality, namely that "[s]oftware license orders are generally higher in our fourth fiscal quarter and lower in our first fiscal quarter, with a significant decline in license orders in the first quarter of a fiscal year when compared to license orders in the fourth quarter of the prior fiscal year." *See* 2003 10-K at 10, Ex. B.

**The Original Complaints**

On July 7, 2004, the first of several securities class action complaints was filed against VERITAS and its officers. *Kuck v. VERITAS Software Corp.*, Civ. No. 04-831. These complaints were brought on behalf of a putative class of investors who purchased VERITAS securities between April 21, 2004 and July 6, 2004 (the "Original Class Period"). *See, e.g., Kuck* Compl. ¶26. They alleged generally that VERITAS' guidance for the Second Quarter 2004 was false because negotiations for significant transactions were not sufficiently far enough in the process to conclude reasonably that they would close. *Id.* ¶28.

**The Consolidated Amended Class Action Complaint**

On May 27, 2005, plaintiffs filed the CAC. In addition to adding a new defendant (Mr. Brigden, VERITAS' General Counsel), plaintiffs have expanded the Original Class Period by one year, purporting now to bring this lawsuit on behalf of a putative class of investors who purchased VERITAS securities between April 23, 2003 and July 6, 2004 (the "New Class Period"). ¶¶1, 10.

With respect to their original forecast claims, plaintiffs allege that VERITAS' guidance for the Second Quarter 2004 was false because the factors Mr. Bloom identified during the July 27, 2004 conference call as contributing to the miss existed and were actually known to defendants at the time the guidance was issued. ¶43. With respect to their new accounting claims, plaintiffs allege that VERITAS' periodic reports issued throughout 2003 and the first quarter of 2004 were false and misleading. ¶¶24-30, 34, 37-39. That claim is based solely on allegations that VERITAS' financial results

included revenue from contracts that had not been signed and for which actual terms had not been agreed to at the time revenue was recognized. ¶¶31, 33, 35, 40.

For the reasons discussed more fully below, plaintiffs' CAC fails to state a claim under Section 10(b) of the Exchange Act of 1934 and fails to satisfy the heightened pleading requirements imposed by the Reform Act and Rule 9(b).

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARDS

To state a claim under Section 10(b), plaintiffs must allege: "(1) that the defendant made a misrepresentation or omission of (2) a material (3) fact; (4) that the defendant acted with knowledge or recklessness and (5) that the plaintiff reasonably relied on the misrepresentation or omission and (6) consequently suffered damage." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 537 (3d Cir. 1999) (*citation omitted).*

To plead adequately a Section 10(b) claim, plaintiffs must satisfy the Reform Act and Rule 9(b).[6] *Id.* at 530-31. The Reform Act was enacted "to provide added protection against what was perceived as a growing number of frivolous 'strike suits' aimed at

---

[6]    Rule 9(b) provides that, "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." 180 F.3d at 531 (citation omitted). To comply with Rule 9(b), plaintiffs must plead the "'who, what, when, where, and how: the first paragraph of any newspaper story.'" *Id.* at 534 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The Third Circuit has repeatedly made clear that, "to the extent that Rule 9(b)'s allowance of general pleading with respect to mental state conflicts with the [Reform Act's] requirement that plaintiffs 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' [citation omitted] . . . the [Reform Act] '*supersedes* Rule 9(b) as it relates to Rule 10b-5 actions.'" *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 148 (3d Cir. 2004) (quoting *Advanta*, 180 F.3d at 531, n.5) (emphasis added).

achieving quick settlements." *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 625 (D.N.J. 2002).[7]

The Reform Act requires plaintiffs to "*specify* each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B) (emphasis added). Plaintiffs must also "state with particularity *all facts* on which that belief is formed." *Id.* (emphasis added). As the Third Circuit recently confirmed, plaintiffs must allege particularized facts supporting their contentions of fraud and can no longer "benefit from inferences flowing from vague or unspecific allegations – inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis." *California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 145 (3d Cir. 2004) (*citation omitted*).

The Reform Act further requires that plaintiffs, "with respect to each act or omission, . . . state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). Unlike inferences under Rule 12(b)(6), inferences of scienter under the Reform Act must be "both reasonable and 'strong.'" *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 150 (3d Cir. 2004). Failure to meet the Reform Act's pleading requirements will result in dismissal. 15 U.S.C. § 78u-4(b)(3)(A); *see also Bernstock*, 195 F. Supp. 2d at

---

[7]  The purpose of the Reform Act "was to restrict abuses in securities class-action litigation, including: (1) the practice of filing lawsuits against issuers of securities in response to any significant change in the stock price, regardless of defendants' culpability; (2) the targeting of 'deep pocket' defendants; (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys." *Advanta*, 180 F.3d at 531 (*citation omitted*).

625 ("If a complaint fails to comply with the specific pleading requirements of the [Reform Act], dismissal of the complaint is statutorily mandated.").

As discussed below, the CAC fails to plead a Section 10(b) claim with respect to both plaintiffs' forecast and accounting allegations and falls far short of meeting the requisite pleading requirements, as well.

## II.    PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE STATEMENT REGARDING THEIR FORECAST ALLEGATIONS

Plaintiffs challenge the guidance issued on April 21, 2004 (in a press release), May 5, 2004 (in a conference with securities analysts) and June 14, 2004 (in a press release) in which VERITAS predicted that it would earn between $490 and $505 million in revenue and $0.21 to $0.23 EPS in the Second Quarter 2004. ¶¶34, 36-37. VERITAS subsequently disclosed that it would earn only $475 to $485 million because its quarterly results had been adversely impacted by weakness in U.S. enterprise sales.[8] ¶44; Ex. H. Plaintiffs cannot state an actionable claim based on VERITAS' guidance in light of the Reform Act's safe harbor for forward-looking statements, as well as the judicially-created "bespeaks caution" doctrine.

The Reform Act's "safe harbor" shields defendants from liability for "forward-looking" statement, which are either accompanied by "meaningful cautionary statements" or "immaterial." 15 U.S.C. § 78u-5(c).[9] It is well-recognized that the Reform Act's safe harbor was modeled after the judicially-created "bespeaks caution" doctrine. *See Gavish*

---

[8]    VERITAS' revenue for the Second Quarter 2004 was $485 million. Ex. K at 2.

[9]    "The purpose behind this safe harbor is to encourage the disclosure of forward-looking information." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109, 2000 U.S. Dist. LEXIS 15369, at *16 (N.D. Cal. Sept. 29, 2000), citing H.R. Conf. Rep. No. 104-369, at 53 (1995) (attached hereto as Exhibit B).

*v. Revlon, Inc.*, No. 00 Civ. 7291, 2004 WL 2210269, at \*21 (S.D.N.Y. Sept. 30, 2004) (attached hereto as Exhibit C); *In re Champion Enterprises, Inc. Sec. Litig.*, 144 F. Supp. 2d 848, 862 (E.D. Mich. 2001), *aff'd,* 346 F.3d 660 (6th Cir. 2003); *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1245 (D. Utah 1999). Under the "bespeaks caution" doctrine, alleged misrepresentations are immaterial where no "reasonable investor could consider them important in light of adequate cautionary language [accompanying them]." *Revlon*, 2004 WL 2210269 at \*21 (quoting *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002)).

A "forward-looking" statement includes: (A) "a statement containing a projection of revenues," (B) "a statement of the plans and objectives of management for future operations," (C) "a statement of future economic performance," and (D) "any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C)." 15 U.S.C. § 78u-5(i)(1). There can be no question that VERITAS' guidance for the Second Quarter 2004 was forward-looking because it was "a projection of revenues." *Id.*; *see also Advanta*, 180 F.3d at 536 (statement regarding company's expectation of increase in revenues is a forward-looking statement).

Where a defendant moves to dismiss based upon the safe harbor, "courts shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant." 15 U.S.C. §78u-5(e). Cautionary language can be found within the statement itself or in a readily available document incorporated by reference, such as SEC filings. *See, e.g., Champion Enterprises*, 144 F. Supp. 2d at 859, 862 (dismissing claims based on forward-looking statements in press releases because of reference to

warnings in Form 10-K; "particularly in a fraud on the market case, the relevant inquiry concerns the total mix of information available to the market at the time of the allegedly fraudulent statements.") (citation omitted); *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1167 (N.D. Ill. 2004) (dismissing claims based on projected future earnings in light of warnings in SEC filings).[10]

Cautionary language is sufficient under the safe harbor where it includes "important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. §78u-5(c)(1)(A)(i). The safe harbor "does not require a listing of *all* factors." *Harris v. IVAX Corp.*, 182 F.3d 799, 807 (11th Cir. 1999). As the Eleventh Circuit explained, "when an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward." *Id.*; *Champion*, 144 F. Supp. 2d at 859, 862.

_____

[10] Plaintiffs allege that defendants reiterated the Second Quarter 2004 guidance on May 5, 2004 during an Analyst Day conference in Las Vegas. ¶36. An oral forward-looking statement is protected by the safe harbor if the Company refers to readily-available documents containing meaningful cautionary statements, such as documents filed with the SEC. 15 U.S.C. § 78u-5(c)(2)(B)(i). At the outset of the presentation, VERITAS' Director of Investor Relations (Renee Budig) referred participants to VERITAS' Form 10-K and 10-Q for a full documentation of the risks and uncertainties involved in the forward-looking statements that would be made. Ex. J at 2. The Court may properly consider the transcript of Ms. Budig's introductory statement for the purposes of determining whether she gave a safe harbor warning. *See e.g.*, *In re Best Buy Co., Inc. Sec. Litig.*, No. 03-6193, 2005 U.S. Dist. LEXIS 6427, at *19 (D. Minn. Apr. 12, 2005) (plaintiff failed to overcome safe harbor where "conference call was prefaced by cautionary language") (attached hereto as Exhibit D); *Midway Games*, 332 F. Supp. 2d at 1170 (statement at beginning of call that "actual results could differ from those anticipated in the forward-looking statements" and reference to corporation's form 10-K sufficient to invoke safe harbor provision).

14

Each of VERITAS' press releases referred investors to its public filings for information regarding potential risks that could cause actual results to differ materially from these projections. Ex. H. At the time it issued the Second Quarter 2004 guidance, VERITAS' public filings warned investors that its "revenue is difficult to forecast and is likely to fluctuate from quarter to quarter due to many factors outside of [its] control. Any significant revenue shortfall or lowered revenue or earnings forecasts could cause the market price of our securities to decline substantially." According to VERITAS, factors that could affect its revenue included "the possibility that our customers may cancel, defer or limit purchases as a result of reduced [information technology] budgets or weak and uncertain economic and industry conditions." *See* 3Q 2003 10-Q at 45; 2003 10-K at 39, Exs. A, B. VERITAS also warned that, "[i]f we experience lower-than-anticipated revenue in any particular quarter, or if we announce that we expect lower revenue or earnings than previously forecasted, the market price of our securities could decline." *Id.*

This cautionary language apprised investors of the precise risk that materialized in the Second Quarter 2004, namely the weakness in U.S. enterprise sales occasioned by constraints on customer spending. Ex. E at 21, 37-38. Under these circumstances, defendants are entitled to invoke the protections of the statutory safe harbor and "bespeaks caution" doctrine, and VERITAS' guidance is not actionable.[11]

---

[11] Plaintiffs also appear to allege that certain positive statements made in VERITAS' April 21, 2004 press release, such as "[o]ur strong first quarter financial results demonstrate the fundamental strength of our business strategy and the benefit of an improvement in IT spending" and "[b]uilding on the strength of a solid first quarter, we continue to view 2004 as an important growth year for VERITAS," were false. ¶34. It is well-established that such vague and general expressions of optimism are nothing more than immaterial "puffery" on which no reasonable investor can rely because they do not

(continued...)

**III.    PLAINTIFFS FAIL TO PLEAD ADEQUATELY A CLAIM BASED ON VERITAS' GUIDANCE FOR THE SECOND QUARTER 2004**

Plaintiffs also fail to plead adequately a claim based on VERITAS' Second Quarter 2004 because they fail to plead adequately that the guidance was false when made and fail to plead adequately facts demonstrating that defendants *actually knew* of such alleged falsity at the time the guidance was issued.

**A.    Plaintiffs Fail To Plead Facts Demonstrating That VERITAS' Guidance For Q2 2004 Was False When Made**

Plaintiffs allege that VERITAS' guidance for the Second Quarter 2004 was false for three reasons: (1) VERITAS' transactions worth over $100,000 had decreased from 286 in the December 2003 quarter to only 246 in the March 2004 quarter, and management knew but failed to disclose that VERITAS would need well over 246 transactions to meet its projections; (2) problems from the restatement and accounting issues required the significant time and attention of the executives, thereby impacting sales; and (3) customer buying patterns had become more cautious, leading to longer sales cycles and smaller average deal size.  ¶43.

Each of plaintiffs' allegations of falsity comes directly from VERITAS' conference call on July 27, 2004 in which it disclosed the factors it believed contributed to the quarterly shortfall, namely more cautious customer buying patterns in enterprise accounts (including a reduction in large transactions) and the diversion of management's

---

(...continued from previous page)

alter the "total mix" of information made available.  *Advanta*, 180 F.3d at 538-39 (dismissing allegations based on non-actionable expressions of optimism for the future); *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 579-81 (D.N.J. 2001) (dismissing as puffery statements such as, "I trust that in 1998 we will enjoy another year of continuous growth" and "[t]he first quarter of 1998 shows that NICE continues to benefit from its technological leadership and strong competitive position").

time and attention as a result of the restatement announced on March 15, 2004. *See supra* at 6-7. As such, plaintiffs' allegations are nothing more than fraud-by-hindsight. Courts in this Circuit and elsewhere have uniformly rejected such pleading because "plaintiff does not state a claim for securities fraud merely because a company discloses, after the fact, that its performance failed to meet expectations." *See In re Advanta Corp. Sec. Litig.*, No. 97-CV-4343, 1998 WL 387595, at *7 (E.D. Pa. July 9, 1998), *aff'd*, 180 F.3d 525 (3d Cir. 1999) (attached hereto as Exhibit E); *see also California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 158 (3d Cir. 2004) (*internal citations omitted*) ("We have been clear that fraud cannot be inferred merely because 'at one time the firm bathes itself in a favorable light' but 'later the firm discloses that things are less than rosy.' . . . We have long rejected attempts to plead fraud by hindsight.") (citation omitted); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("Corporate officers need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.") (*citation omitted*).

Plaintiffs also fail to allege any particularized facts to support their assertions of falsity. Plaintiffs' Consolidated Amended Complaint is utterly void of any reference to documents or confidential witnesses supporting their contention that defendants were aware of the factors contributing to the quarterly shortfall when they provided the forecasts for the Second Quarter 2004. *See In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 308 (D.N.J. 2001) (dismissing claim where, for vast majority of allegations, plaintiffs "do not cite to a single document or provide the name of a single person who supposedly has information supporting" them). While plaintiffs purport to rely on a few confidential sources to support their forecast allegations, remarkably, none of these

17

sources offers any information that support plaintiffs' theory of the case. None of these sources purports to provide any information that would buttress plaintiffs' assertion that defendants knew ahead of time of the disclosed factors contributing to the Second Quarter 2004 shortfall. Instead, these sources attribute the shortfall to a miscellany of unspecified factors, to which VERITAS has never "admitted" and to which plaintiffs fail to link the actual reasons for VERITAS' failure to achieve its target estimates.[12]

Moreover, plaintiffs fail to allege their confidential source allegations with the requisite specificity. To rely on confidential personal sources, plaintiffs must describe these sources "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Chubb Corp.*, 394 F.3d at 146 (citing *Novak v. Kasaks*, 216 F.3d at 314). To assess the particularity, this Court must examine "the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations and similar indicia." *Id.* at 147.

None of plaintiffs' confidential witnesses is a reliable source of information because each of them either left VERITAS' employ well before the Second Quarter 2004 or is not alleged to have had positions at VERITAS that would have given him or her any insight into the reasons for the Second Quarter 2004 shortfall. Confidential Witness ("CW") #1, for example, was allegedly an inside sales manager for the southeast region employed at VERITAS until the end of the first quarter (March 31, 2004). CW#1

---

[12] For the convenience of the Court, defendants attach a chart summarizing the confidential witness allegations, attached hereto as Exhibit A.

describes a hodge-podge of problems allegedly occurring at VERITAS, including poor growth in software upgrade sales and consulting services revenue. ¶45. CW#1 also alleges that none of the sales people met their quotas at the end of the first quarter. *Id.*

There are several problems with plaintiffs' allegations based on CW#1. First, CW#1 was allegedly employed for the "southeast region." ¶23(a). Plaintiffs do not explain how a sales manager in the southeast region could have knowledge of the state of VERITAS' sales on a nationwide, let alone worldwide, basis. The holding in *California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 146 (3d Cir. 2004) is dispositive on this point. In *Chubb*, the Third Circuit affirmed the district court's dismissal of plaintiffs' securities claims. While plaintiffs relied on alleged former employees, they failed, among other things, to plead "when any of them were employed by Chubb . . . the dates that these sources acquired the information they purportedly possess, or how any of these former employees had access to such information," leaving the court "to speculate whether the anonymous sources obtained the information they purport to possess by firsthand knowledge or rumor." *Id.* at 148. The Third Circuit found particularly problematic plaintiffs' reliance on employees who had worked in Chubb's local branch offices since, without an adequate basis for their alleged information, it was not sufficiently probable that they could have information concerning Chubb's loss of business on a national scale. *Id.* at 148-52.[13]

---

[13]    *See also Freed v. Universal Health Services, Inc.*, No. 04-1233, 2005 WL 1030195, at *7 (E.D. Pa. May 3, 2005) (dismissing allegations based on sources employed at two local hospitals because "none of them claims to have information regarding a nationwide increase in the treatment of indigent patients or rising levels of bad debt at UHS facilities in general.") (attached hereto as Exhibit F).

CW#1's allegations are far too vague to form the basis of a fraud claim. Since CW#1 left VERITAS' employ before the Second Quarter 2004 even began, he could not have firsthand knowledge of the reasons for the quarterly miss. Plaintiffs' allegations reveal as much. CW#1 claims that VERITAS' goal of achieving 10% consulting services revenue was not achieved in 2003. ¶45. Not only does this allegation fail to contradict VERITAS' public disclosure,[14] but also plaintiffs fail to allege how it contributed to the Second Quarter 2004 shortfall. Indeed, plaintiffs concede that CW#1's assertions are based on speculation, not personal knowledge, when they allege he said, "consulting services revenue *must have been* part of the revenue estimates . . . ." ¶45 (emphasis added). Similarly, while CW#1 alleges that none of the sales people met their quotas at the end of the first quarter, plaintiffs fail to allege how this would have spelled doom for the Second Quarter 2004, particularly when VERITAS disclosed that its license orders are usually higher in the fourth quarter than in the first quarter,[15] and plaintiffs do not contest the fact that VERITAS achieved its first quarter projections.

Plaintiffs' other confidential sources are no more illuminating. CW#3 and CW#4 allegedly worked in VERITAS' legal department. CW#3 allegedly had contract review responsibilities and was employed throughout 2003. He or she claims that demand for

---

[14]    VERITAS disclosed in its Form 10-K for 2003, "Our professional services revenue, which consists of training and consulting services, grew by 6% and 2% in 2003 and 2002, respectively. These growth rates are below our objectives. We are investing in professional services and believe that it is important to establish current relationships with our customers. We expect our services revenue to increase in absolute dollars and as a percentage of net revenue as we continue to focus on increasing renewals of maintenance and technical support contracts and an increasing demand for our consulting and education services." 2003 10-K at 28, Ex. B.

[15]    *See supra* at 7 n.5 and Ex. G.