**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE VERITAS SOFTWARE CORP. SECURITIES LITIGATION | ) ) ) ) ) ) | Case No:  04-CV-831 (SLR) Consolidated Action<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

OF COUNSEL:

Nina F. Locker
Peri Nielsen
Wilson Sonsini Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, California  94304-1050
Tel: (650) 493-9300

Dated:  September 19, 2007
819805 / 29298

Peter J. Walsh, Jr. (#2437)
Kenneth L. Dorsney (#3726)
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Floor
Wilmington, Delaware  19899-0951
Tel:  (302) 984-6000
pwalsh@potteranderson.com
kdorsney@potteranderson.com

*Attorneys for Defendants VERITAS Software
Corporation, Edwin J. Gillis and Gary L. Bloom*

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ............................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................... 1

SUMMARY OF ALLEGATIONS .......................................................................................... 3

BACKGROUND .................................................................................................................. 4

ARGUMENT ...................................................................................................................... 8

I.      SUMMARY JUDGMENT STANDARDS ........................................................................ 8

II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF
        THE DEFENDANTS ..................................................................................................... 9

        A.      There Is No Issue Of Fact to Support the Allegations, Let Alone a Triable
                One ................................................................................................................. 9

        B.      Dismissal of the Entire Case Is Appropriate ...................................................... 10

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................ 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................ 8

*In re Cirrus Logic Sec. Litig.*,
  946 F. Supp. 1446 (N.D. Cal. 1996) .................................................... 9

*In re Cypress Semiconductor Sec. Litig.*,
  891 F. Supp. 1369 (N.D. Cal. 1995)
  *aff'd mem.*, 113 F.3d 1240 (9th Cir. 1997) ........................................ 9

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................ 9, 10, 12

*Horowitz v. Fed. Kemper Life Assurance Co.*,
  57 F.3d 300 (3d Cir. 1995) .................................................................. 8

*In re Intelligroup Sec. Litig.*,
  468 F. Supp. 2d 670 (D.N.J. 2006) .................................................... 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ......................................................................... 8, 9

*McLean v. Alexander*,
  599 F.2d 1190 (3d Cir. 1979) .............................................................. 9

*Orson, Inc. v. Miramax Film Corp.*,
  79 F.3d 1358 (3d Cir. 1996) ................................................................ 8

*Sterling Nat'l Mortgage Co. v. Mortgage Corner, Inc.*,
  97 F.3d 39 (3d Cir. 1996) .................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  127 S.Ct. 2499 (2007) ........................................................................ 12

*In re Tyson Foods, Inc. Sec. Litig.*,
  C.A. No. 01-425, 2004 WL 1396269 (D. Del. June 7, 2004) ............... 8

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ............................................................. 12

**STATUTES**

Fed. R. Civ. P. 56(c) ................................................................................................... 8

Fed. R. Civ. P. 56(e) ................................................................................................... 8

**MISCELLANEOUS**

H.R. Conference Report ("Conf. Rep."), 1995 WL 709276 (Nov. 28, 1995) .............................. 11

## NATURE AND STAGE OF PROCEEDINGS

This is a securities class action. The original complaint was filed on July 7, 2004, after Veritas Software Corporation ("VERITAS" or the "Company") announced it would fall short of its revenue and earnings expectations for the second quarter of 2004 ("Q2'04"). The complaint named as defendants the Company, Gary Bloom (the Company's former CEO) and Ed Gillis (the Company's former CFO). The initial class period was April 21, 2004 through July 7, 2004. Several substantially similar suits were filed thereafter, and, on March 3, 2005, this Court consolidated these lawsuits and appointed Tay Siew Choon and Mark Leonov as co-lead plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 (the "Reform Act").

On May 27, 2005, lead plaintiffs filed a Consolidated Amended Class Action Complaint. They added John Brigden (the Company's former General Counsel) as a defendant and extended the class period back to April 23, 2003, alleging that defendants had recognized revenue from unsigned contracts or contracts lacking essential terms during this period. Defendants moved to dismiss the complaint on July 20, 2005. On May 23, 2006, this Court denied the motion to dismiss, finding that plaintiffs' allegations concerning improper revenue recognition satisfied the Reform Act's pleading requirements. Defendants filed an answer to the Complaint on June 7, 2006. Plaintiffs filed a Second Consolidated Amended Class Action Complaint on September 5, 2006 (the "Complaint").[1] October 25, 2006, this Court entered an order certifying the class. The parties have been engaged in discovery since that time.

## SUMMARY OF ARGUMENT

This Court denied defendants' motion to dismiss on the basis of plaintiffs' allegations that the Company recognized revenue from unsigned contracts or contracts lacking essential terms (hereinafter "revenue recognition allegations"). Plaintiffs alleged that Mr. Brigden, the

---

[1] The only difference between the Consolidated Amended Class Action Complaint and the Second Consolidated Amended Class Action Complaint was a change in the definition of the class.

Company's former General Counsel, orchestrated this purported scheme. Plaintiffs have now voluntarily dismissed Mr. Brigden from the case. Mr. Brigden should never have been named in the first place. The allegations against him were based on what have proven to be patently erroneous accounts of what the confidential witnesses referenced in the Complaint told plaintiffs. Notwithstanding this undisputed fact, plaintiffs refuse to dismiss the revenue recognition allegations against the remaining defendants. Plaintiffs' entire theory of the case is based on these specious allegations against Mr. Brigden, and there is no evidence to support them, as reflected by his dismissal. Defendants now move for summary judgment.

As plaintiffs (and their counsel) well know, all decisions relating to revenue recognition were handled by the Company's finance, not legal, department. The finance department determined whether and when revenue would be recognized from orders. If a software license sales order met the criteria for revenue recognition, the order was shipped, and the revenue was recognized. If a software license sales contract required signatures and did not have signatures, the finance department's process required the contract to be placed on automatic hold. While attorneys from the legal department, including Mr. Brigden, would sign contracts on behalf of the Company, they had no knowledge or role in determining whether and when revenue would be recognized from these contracts. That information was within the purview of the finance department. Mr. Gillis, the former CFO, is unaware of any instance in which revenue was recognized from contracts lacking required signatures or material terms.

Plaintiffs have no facts to the contrary. Indeed, discovery has revealed that plaintiffs' sole support for their allegations was a former secretary *who left the Company before the Class Period even began*. This supposed witness has no personal knowledge of events that transpired during the Class Period and knows nothing about the revenue recognition process, Mr. Brigden's role, or whether or not any revenue was ever recognized improperly. Plaintiffs' other supposed witness, a former contract negotiator who supposedly told one of plaintiffs' lawyers that the Company's legal department was responsible for determining when to recognize revenue, has disavowed the allegations ascribed to her in their entirety.

In its opinion denying the motion to dismiss, this Court stated, "[i]t is clear that all of plaintiffs' claims stem from their assertion that defendants inflated Veritas' financial condition by including, as revenue, contracts that were not yet finalized; i.e., defendants are alleged to have improperly recognized revenue, thereby knowingly misrepresenting Veritas' current and forecast revenue, net income and earnings per share." Opinion at 14.   Given the frivolous basis for these claims and the lack of evidence to support them, defendants believe dismissal of this case is appropriate at this stage of the proceedings.

## SUMMARY OF ALLEGATIONS

Plaintiffs allege that the Company's earnings releases and Forms 10-Q for Q1'03 (¶¶24-25), Q2'03 (¶¶26-27), Q3'03 (¶¶28-29), Q4'03 and 2003(¶¶30, 37-38), Q1'04 (¶¶34, 39), as well as the Company's announcement on March 15, 2004 (¶32), were false and misleading because the financial results included revenue that had been recognized from purported contracts which had not been signed and for which actual terms were not agreed to at the time the revenue was recognized.  ¶¶31,33,35,40.

Plaintiffs based these accounting allegations on the accounts of three confidential witnesses ("CW"). CW#3 "worked in the legal department at Veritas throughout 2003 and had contract review responsibilities." ¶23(c).  According to plaintiffs, CW#3 told them the following:

> Defendant Brigden "approved contracts (knowing that they would therefore be included in revenue recognition) despite the facts that they lacked essential terms such as the price, and in some cases were unsigned by the customers. The revenue results for a quarter were determined before the quarter had ended, and the 'fake' contracts were approved and recognized as revenue. At one point, when Confidential Witness #3 protested that the contracts were incomplete, Defendant Brigden said to Confidential Witness #3: "What's the difference? We already know what the numbers for the quarter are." Defendant Brigden also fired highly regarded and honest employees and brought in employees who would do whatever he wanted, and began to insist on reviewing the large price contracts, such as with IBM, himself and not letting other contract reviewers handle them. Confidential Witness #3 saw some of the large price contracts, and they lacked critical terms such as the price. Booking revenues on contracts that had not been signed, or lacked essential terms such as the price, was standard

-3-

practice at least through 2003, according to Confidential Witness #3.

¶41(b).

CW#4 "worked in the legal department at Veritas during the Class Period, had responsibilities related to the negotiation of licenses and had regular interaction with the finance department throughout the Class Period until the end of the first quarter of 2004". ¶23(d). According to plaintiffs, CW#4 said "the legal department was responsible for deciding when revenue could be recognized and reported." ¶41(a).[2]

## BACKGROUND

### *The Company*

VERITAS was headquartered in Mountain View, California and provided storage management software for data protection, application availability and disaster recovery. ¶7.[3] VERITAS was one of the ten largest software companies in the world. *Id.* Its annual revenue in 2003 and 2004 was $1.7 and $2.04 billion, respectively. VERITAS was acquired by Symantec in July of 2005. Gary Bloom was VERITAS' Chief Executive Officer from November 2000 until the Symantec merger when he joined Symantec. Ed Gillis was VERITAS' Chief Financial Officer from November 2002 until the Symantec merger when he joined Symantec. John Brigden was VERITAS' General Counsel from May 2001 until the Symantec merger when he joined Symantec.

---

[2] CW#5 "was a sales staff administrator at Veritas during the Class Period until the end of [] 2003 and was involved with new contracts." ¶23(e). According to plaintiffs, CW#5 said that "there was great pressure from Veritas management to report revenue sufficient to meet earnings estimates, and, as a result, sales personnel would 'all the time' write up and process contracts without essential terms and customer signatures, in order to meet revenue targets and 'bolster the numbers.'" ¶41(c). Defendants have been unable to identify the source for this allegation, and plaintiffs have refused to disclose it.

[3] Unless otherwise noted, cites denoted as "¶__" refer to paragraphs in the Consolidated Amended Class Action Complaint. Cites reflected as "Ex. __" refer to exhibits attached to the Declaration of Kenneth L. Dorsney ("Dorsney Decl.").

***The Revenue Recognition Process***

VERITAS had a process in place to ensure that its sales orders satisfied the requisite revenue recognition criteria. Declaration of Edwin Gillis ("Gillis Decl.") at ¶ 2-3.[4] That process was managed by the Company's finance, not legal, department. The finance department reviewed all sales orders to determine their validity. That review included related documentation, such as purchase orders, correspondence, shipping materials, license keys and related materials. The finance department was responsible for determining whether an order satisfied the criteria for revenue recognition and, if so, when and how much revenue would be recognized from it. *Id.* ¶ 2.

If a contract lacked a required signature, the finance department's process required that the order be placed on automatic hold. Mr. Gillis, the former CFO, is not aware of any instance where this process was not followed. Mr. Gillis is also not aware of any instance where the Company improperly recognized revenue from contracts lacking signatures or material terms. *Id.* ¶ 3. In addition, at the end of each quarter, VERITAS' outside auditors (KPMG) reviewed all contracts over $250,000 and performed internal control test/work for contracts under $250,000 to make sure they satisfied the revenue recognition criteria. Mr. Gillis does not recall KPMG's ever apprising him of any instance where VERITAS recognized revenue from contracts lacking signatures or material terms. Gillis Decl. ¶4.

The legal department's role in the contract review process was limited to negotiating legal terms and conditions and signing the sales contracts on behalf of the Company. Mr. Brigden (or another attorney in the department) would sign all contracts. Brigden Decl. ¶ 4. If a contract was non-standard, he or another attorney would make sure the contract had received the required cross-departmental approvals. Sometimes, prices appeared on contracts; sometimes

---

[4] The Declarations and/or Affidavits of John Brigden, Kenneth L. Dorsney. Edward Gillis, David L. Lansky, and Dana C. Thomas are being filed contemporaneously herewith.

these terms were contained in follow-on purchase orders, which did not require signatures and were not processed through the legal department. Sometimes customers signed contracts before Mr. Brigden (or another attorney); sometimes they did not. Once a final and fully executed contract was obtained, it was forwarded to the finance department, which would make the revenue recognition determination. Mr. Brigden did not know what revenue, if any, would be recognized on contracts he signed during a given quarter. *Id.* ¶ 6.

### *Plaintiffs' Supposed Sources*

Plaintiffs' allegations to the contrary were based on three confidential witnesses ("CWs"): CW#3, CW#4, and CW#5. Plaintiffs alleged that CW#3 worked in VERITAS' legal department "throughout 2003" and had "contract review responsibilities." ¶23(c). This is untrue. Defendants have ascertained that this purported witness is Carla Kidd, *an administrative assistant* who left VERITAS *in 2002*. Brigden Decl. ¶ 7. Ms. Kidd's role was clerical in nature. She had no role in contract review or approval, no interaction with the finance department and no insight into what revenue was recognized from what contract or when. *Id.* ¶ 7.

During a phone call with defendants' counsel on September 25, 2006, defendants confirmed that Ms. Kidd had no knowledge of events that transpired during the Class Period. She could not identify any contracts from which revenue was recognized improperly (including the contract that was the subject of the allegation contained in Paragraph 41(b)). Ms. Kidd had no insight into what revenue was recognized from what contract or when. She did not know what Mr. Brigden knew or did not know regarding the final determination of revenue recognition on contracts he signed. Her allegations were based on rampant speculation. Lansky Decl. ¶2(f).[5]

CW#4 was allegedly employed in VERITAS' legal department as a contract negotiator during the Class Period. Defendants have ascertained that CW#4 is Dana Thomas. Ms. Thomas

---

[5] Ms. Kidd appears to no longer be a resident of the State of California. Defendants have been unable to locate her to serve her with a deposition subpoena.

had two conversations with an attorney representing plaintiffs in this matter. Thomas Decl. ¶ 2. Ms. Thomas denies ever having told this attorney that the Company's legal department was responsible for deciding when revenue could be recognized. *Id.* ¶ 4. Ms. Thomas believes that revenue recognition was the finance department's responsibility. Ms. Thomas also denies ever having told this attorney that "As a result of the downturn in demand, and the resulting need to cut costs, was also evidenced by the fact that even though people who left during the first quarter of 2004 were not replaced, despite the fact that Veritas was understaffed, according to Confidential Witness # 4," as alleged in Paragraph 45(f).[6]  Ms. Thomas was unaware of any downturn in demand or need to cut costs in the first quarter of 2004.   Thomas Decl. ¶ 5.

Plaintiffs voluntarily dismissed Mr. Brigden, the supposed mastermind of the improper revenue recognition scheme, from this action, presumably recognizing that there was no basis for making the allegations against him. Court Order as of August 31, 2007 (granting stipulated dismissal of John Brigden). Indeed, plaintiffs could not have reasonably believed Ms. Kidd had a factual basis for accusing Mr. Brigden of accounting fraud given that she left the Company before the Class Period began and held a position that would not have given her any insight into the revenue recognition process, let alone what role Mr. Brigden played in it.

Notwithstanding, plaintiffs have refused to dismiss the revenue recognition claims against the remaining defendants, even though they are supported by the same incompetent source. Given the spurious basis on which their allegations were made, the lack of any evidence to support them, and the fact that this Court's decision to deny defendants' motion to dismiss

---

[6] Plaintiffs have refused and continue to refuse to disclose the identities of their CWs, including CW#5. *See* Ex. A to Dorsney Decl. at 3, Plaintiffs' Responses to Second Set of Interrogatories Nos. 6 & 7. To date, defendants have been unable to identify CW#5, the former sale staff assistant who claimed there was "great pressure" from management to meet estimates and that, as a result, "sales personnel would 'all the time' write up and process contracts without essential terms and customer signatures, in order to meet revenue targets and 'bolster the numbers.'" ¶¶ 23(e), 41(c). Given that this source was purportedly a member of the Company's sales department, he or she would have no knowledge of how or when revenue was recognized from contracts in any event. Gillis Decl. ¶ 5.

was based entirely on these allegations, defendants are entitled to summary judgment, and this case should be dismissed in its entirety.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56 authorizes this Court to grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).

The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). As the Third Circuit (and this Court) has recognized, "[f]acts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *In re Tyson Foods, Inc. Sec. Litig.*, C.A. No. 01-425, 2004 WL 1396269, at *6 (D. Del. June 17, 2004) (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)). Speculation and conclusory allegations are insufficient to forestall summary judgment. *See Sterling Nat'l Mortgage Co. v. Mortgage Corner, Inc.*, 97 F.3d 39, 44 (3d Cir. 1996). Nor may a plaintiff rest on evidence that is "merely colorable" or "of insufficient caliber or quantity." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 254 (1986). Rather, plaintiffs must produce "*significant probative evidence*" sufficient to support a jury verdict. *Id.* (Emphasis added, citation omitted). Defendants are entitled to summary judgment if there is a "failure of proof concerning [any] essential element" of plaintiffs' case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc.*, 79 F.3d at 1366. In addition, in some cases, "the factual context may render the nonmoving party's claim

implausible, and the nonmoving party must come forward with 'more persuasive evidence' to support the claim 'than would otherwise be necessary.'" *In re Cypress Semiconductor Sec. Litig.*, 891 F. Supp. 1369, 1373 (N.D. Cal. 1995) (quoting *Matsushita*, 475 U.S. at 587) *aff'd mem.*, 113 F.3d 1240 (9th Cir. 1997).

If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Id.* (quoting *Celotex*, 477 U.S. at 323).

## II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS

### A.    There Is No Issue Of Fact to Support the Allegations, Let Alone a Triable One

The basic elements of a Section 10(b) claim are "(1) a material misrepresentation . . .; (2) scienter, *i.e.*, [defendant's] wrongful state of mind; (3) in connection with the purchase or sale of a security; (4) reliance, often referred to . . . as 'transaction causation'; (5) economic loss; and (6) loss causation, *i.e.,*, a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (citation omitted).

Plaintiffs bear the burden of proving each element of a Section 10(b) claim. *See McLean v. Alexander*, 599 F.2d 1190, 1196 (3d Cir. 1979) (reversing judgment which placed burden of negating scienter on defendant.). Defendants, however, "may dispose of each claim on summary judgment merely by establishing that they are entitled to judgment as a matter of law with respect to one or more of these [] elements." *In re Cirrus Logic Sec. Litig.*, 946 F. Supp. 1446, 1456-57 (N.D. Cal. 1996). If they do, plaintiffs can defeat summary judgment only by establishing that "a material fact exists as to *each* element." *Id.*

There is no evidence to support plaintiffs' allegations that the Company recognized revenue from contracts lacking signatures or material terms. Even if such evidence existed (which it does not), there is no evidence that defendants were aware that revenue had been recognized improperly on account of missing signatures or material terms. As a result, there is

no evidence to support the first two elements of a Section 10(b) claim, i.e., a false or misleading statement and scienter.

This lack of evidence also dismantles the loss causation element of plaintiffs' claim. Plaintiffs alleged that defendants knowingly issued false guidance for Q2'04 because they knew that the Company could no longer recognize revenue from contracts lacking signatures or material terms. Compl. ¶ 43. Since there is no evidentiary support for plaintiffs' improper revenue recognition allegations, there can be no causal connection between those allegations and plaintiffs' losses from the Q2'04 miss as a matter of law. *Dura,* 544 U.S. at 346-47; *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 682 (D.N.J. 2006) ("the very misrepresentation at issue [must have] proximately caused [plaintiffs] an economic loss.").

### B.    Dismissal of the Entire Case Is Appropriate

Dismissal of the entire case is appropriate because this Court's denial of the motion to dismiss was based entirely on an alleged accounting scheme, which was based on frivolous allegations that should never have been made.

The Court determined that plaintiffs adequately pleaded improper revenue recognition based solely on CW#3's (Carla Kidd's) account. Opinion at 20 ("The complaint, based in part on former Veritas employees with personal knowledge of the wrongdoings, alleges a scheme by defendants to inflate the company's revenue numbers by including "sales" from contracts that had not been signed by the customer or that were missing essential terms such as price. The complaint alleges that these fraudulent activities were "'standard practice'" at the company, that they happened "all the time," and that incomplete or unsigned contracts were personally approved by defendant Brigden who, when confronted about this practice, stated, "'What's the difference? We already know what the numbers for the quarter are.'").

This Court also stated that, ""[i]t is clear that all of plaintiffs' claims stem from their assertion that defendants inflated Veritas' financial condition by including, as revenue, contracts that were not yet finalized; i.e., defendants are alleged to have improperly recognized revenue, thereby knowingly misrepresenting Veritas' current and forecast revenue, net income and

-10-

earnings per share." Opinion at 14. Consequently, the Court determined that the claims challenging the Q2'04 guidance were properly pleaded because "the guidance was premised on a base revenue that included revenue from contracts that had not been signed" that "plaintiffs have alleged with sufficient particularity that Veritas' defendants knew that earnings guidance for the Second Quarter of 2004 was unattainable and, therefore, the statements contained in the guidance were knowingly false and misleading." Opinion at 16-17. The Court also decided that defendants were not entitled to protection from liability for forward-looking statements because "plaintiffs have alleged that the earnings forecasts were false or lacked a reasonable basis when made because they were related to improper revenue recognition. No manner of cautionary language can cure false statements knowingly made." Opinion at 15.

The Court also determined that plaintiffs pleaded scienter adequately because Messrs. Bloom and Gillis signed public filings and "[p]laintiffs alleged that defendant Brigden 'had specific responsibility for . . . determining whether, and how much, revenue could be properly recognized and included in the financial results issued during the Class Period and described [in the complaint]." Opinion at 21. Similarly, the Court rejected defendants' loss causation argument because of plaintiffs' arguments tying the allegedly improper revenue recognition to the reasons for the earnings shortfall in Q2'04. Opinion at 18-19. ("While the July 6, 2004 statement did not specifically disclose the improper revenue recognition, it did disclose that the guidance would be less than anticipated. Plaintiffs have asserted that, because defendants used improper revenue recognition, they knew that the original guidance was false and misleading and the real revenue and earnings would never be that high.").

Simply put, without the allegations relating to Mr. Brigden and the accounting scheme he allegedly orchestrated, plaintiffs would have been left with a simple missed forecast claim and would likely have never past the pleading stage.

The passage of the Reform Act was intended to stop the practice of allowing plaintiffs to plead a baseless securities claim and then be allowed to engage in costly and time-consuming discovery. H.R. Conference Report ("Conf. Rep.") 1995 WL 709276, at *32 (Nov. 28, 1995).

("This Conference Report seeks to protect investors, issuers, and all who are associated with our

capital markets from abusive securities litigation. . . . It reforms discovery rules to minimize

costs incurred during the pendency of a motion to dismiss or a motion for summary judgment. . .

. It gives victims of abusive securities lawsuits the opportunity to recover their attorneys' fees at

the conclusion of an action. And it establishes a safe harbor for forward looking statements, to

encourage issuers to disseminate relevant information to the market without fear of open-ended

liability").[7]

The Supreme Court has now, twice, reaffirmed Congress's intent in preventing precisely

this type of abusive litigation. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499,

2510 (2007) (stating that "the inference of scienter must be more than merely 'reasonable' or

'permissible' – it must be cogent and compelling, thus strong in light of other explanations. A

complaint will survive, we hold, only if a reasonable person would deem the inference of

scienter cogent and at least as compelling as any opposing inference one could draw from the

facts alleged."); *Dura*, 544 U.S. at 347 (holding that plaintiff must provide defendant with some

*currently known causal connection* and cannot merely "file a lawsuit . . . with only a faint hope

that the discovery process might lead eventually to some plausible cause of action").

With no credible witness remaining, no evidence from discovery, and already having

voluntarily dismissed Mr. Brigden, it is abundantly clear that plaintiffs have absolutely no

---

[7] In passing the Reform Act, Congress recognized that abusive and manipulative litigation
meant that "innocent parties are often forced to pay exorbitant 'settlements.' When an insurer
must pay lawyers' fees, make settlement payments, and expend management and employee
resources in defending a meritless suit, the issuers' own investors suffer. Investors always are the
ultimate losers when extortionate 'settlements' are extracted from issuers." Conf. Rep. 1995 WL
709276, at *32. Even before the Reform Act, courts have recognized that claims premised on
allegedly false forecasts were often spurious and legal vehicles, such as the "bespeaks caution"
doctrine, should be used to prevent plaintiffs from needlessly increasing the costs to
shareholders, parties and the judiciary attendant to frivolous litigation. *See In re Worlds of
Wonder Sec. Litig.*, 35 F.3d 1407, 1415 (9th Cir. 1994) ("the bespeaks caution doctrine helps 'to
minimize the chance that a plaintiff with a largely groundless claim will bring a suit and conduct
extensive discovery in the hopes of obtaining an increased settlement.'") (citation omitted).

support for their claims.  Accordingly, they should not be allowed to proceed with this case against the remaining defendants.

## CONCLUSION

For each of these reasons, defendants respectfully request that the Court grant summary judgment in their favor and dismiss these proceedings.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Nina F. Locker
Peri Nielsen
Wilson Sonsini Goodrich & Rosati, PC
650 Page Mill Road
Palo Alto, California  94304-1050
Tel: (650) 493-9300

Dated:  September 19, 2007
819805 / 29298

By: */s/ Kenneth L. Dorsney*
      Peter J. Walsh, Jr. (#2437)
      Kenneth L. Dorsney (#3726)
      1313 North Market Street, 6th Floor
      Wilmington, Delaware  19899-0951
      Tel:  (302) 984-6000
      pwalsh@potteranderson.com
      kdorsney@potteranderson.com

*Attorneys for Defendants VERITAS Software Corporation, Edwin J. Gillis and Gary L. Bloom*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Kenneth L. Dorsney, hereby certify that on September 19, 2007, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

to the registered attorney(s) of record that the document has been filed and is available for

viewing and downloading.

I hereby certify that on September 19, 2007, I have Electronically Mailed the document

to the following person(s):

Norman Monhait
Carmella P. Keener
Rosenthal, Monhait & Goddess
Mellon Bank Center, Suite 1401
Wilmington, DE 19899-1070
nmonhait@rmgglaw.com
ckeener@rmgglaw.com

Christopher J. Keller
Ira A. Schochet
David J. Goldsmith
Labaton Rudoff & Sucharow LLP
100 Park Avenue
New York, NY 10017
ckeller@labaton.com
ischochet@labaton.com
dgoldsmith@labaton.com

Robert I. Harwood
Jeffrey M. Norton
Harwood Feffer LLP
488 Madison Avenue
New York, NY 10022
rharwood@hfesq.com
jnorton@hfesq.com

Andrew M. Schatz
Barbara F. Wolf
Schatz Nobel Izard P.C.
One Corporate Center
20 Church St., Ste 1700
Hartford, CT 06103
aschatz@snlaw.net
bwolf@snlaw.net

By:  */s/ Kenneth L. Dorsney*
Peter J. Walsh, Jr. (#2437)
Kenneth L. Dorsney (#3726)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
pwalsh@potteranderson.com
kdorsney@potteranderson.com

735071 / 28298