## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **IN RE VERITAS SOFTWARE CORP.** | : | **Case No: 04-CV-831 (SLR)** |
| **SECURITIES LITIGATION** | : | **Consolidated Action** |
|  | : |  |
|  | : |  |
|  | : |  |
| **This Document Relates to:** | : |  |
|  | : |  |
| **ALL ACTIONS** | : |  |
|  | : |  |

### LEAD PLAINTIFFS' BRIEF IN SUPPORT OF
### APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

**HARWOOD FEFFER LLP**
Robert I. Harwood
Jeffrey M. Norton
488 Madison Avenue
New York, NY 10022
Tel: (212) 935-7400

**LABATON SUCHAROW LLP**
Ira A. Schochet
David J. Goldsmith
140 Broadway
New York, NY 10005
Tel: (212) 907-0700

**IZARD NOBEL LLP**
Jeffrey S. Nobel
Seth R. Klein
Andrew M. Schatz (of counsel)
20 Church Street, Suite 1700
Hartford, CT 06103
Tel: (860) 493-6292

*Co-Lead Counsel for Lead Plaintiffs and
the Class*

**ROSENTHAL, MONHAIT &
GODDESS, P.A.**
    Norman M. Monhait (DSBA #1040)
    919 Market Street, Suite 1401
    Citizens Bank Center
    P.O. Box 1070
    919 Market Street
    Wilmington, DE 19899-1070
    (302) 656-4433
    Email: nmonhait@rmgglaw.com

*Liaison Counsel for Lead Plaintiffs and
the Class*

**July 24, 2008**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

I.      NATURE AND STAGE OF PROCEEDINGS ..................................................................1

II.     SUMMARY OF THE ARGUMENT .................................................................................1

III.    STATEMENT OF THE FACTS ......................................................................................3

IV.     LEGAL STANDARDS GOVERNING
        THE AWARD OF ATTORNEYS' FEES...........................................................................3

        A.      A Reasonable Percentage Of The Fund Recovered
                Is The Appropriate Approach To Awarding Attorneys'
                Fees In Common Fund Cases..................................................................................3

        B.      The Standard For Approval Of Attorneys' Fees In The Third Circuit.......................4

                1.      The Result Achieved and the Number of Persons Benefited.......................6

                2.      The Reaction of the Class as a Whole Confirms That the
                        Request for Fees is Reasonable...................................................................7

                3.      The Skill and Efficiency of the Attorneys Involved....................................7

                4.      The Complexity, Difficulty and Duration of the Litigation .........................9

                5.      The Risk of Nonpayment ..........................................................................11

                6.      The Requested Percentage Fee is Fair and Reasonable When
                        Checked Against the Amount of Time Devoted to the Case .....................13

                7.      The Requested Fee is Customarily Awarded in the Third Circuit
                        and Elsewhere in Similar Contingency Fee Litigation...............................15

V.      PUBLIC POLICY CONSIDERATIONS SUPPORT THE REQUESTED
        FEE ...............................................................................................................................17

VI.     PLAINTIFFS' COUNSEL ARE ENTITLED TO BE REIMBURSED FOR
        THEIR REASONABLE LITIGATION EXPENSES .........................................................19

i

**Page**

VII.   LEAD PLAINTIFFS ARE ENTITLED TO AN AWARD OF
       REASONABLE COSTS AND EXPENSES DIRECTLY RELATING
       TO THE REPRESENTATION OF THE CLASS ............................................................19

VIII.  CONCLUSION ..................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                               **Page**

*Am. Bearing Co. v. Litton Indus., Inc.*,
    540 F. Supp. 1163 (E.D. Pa. 1982),
    *appeal after remand*, 729 F.2d 943 (3d Cir.),
    *cert. denied*, 469 U.S. 854 (1984) ................................................................ 11

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ........................................................................... 11

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...................................................................................... 17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ........................................................................... 4, 17, 18

*Behrens v. Wometco Enterp., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd*, 899 F.2d 21 (11th Cir. 1990) ........................................................... 9, 14

*Bell v. Fore Sys.*,
    2003 U.S. Dist. LEXIS 26676 (W.D. Pa.) ................................................... 15

*Bentley v. Legent Corp.*,
    849 F. Supp. 429 (E.D. Va. 1994) ............................................................... 11

*Blackman v. O'Brien Envtl. Energy, Inc.*,
    1999 U.S. Dist. LEXIS 7160 (E.D. Pa.) ...................................................... 16

*Blum v. Stenson*,
    465 U.S. 886 (1984) ......................................................................... 4, 13, 16

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ........................................................................................ 3

*Cent. R. & Banking Co. v. Pettus*,
    113 U.S. 116 (1885) ..................................................................................... 3, 4

*Clark v. Lomas & Nettleton Fin. Corp.*,
    79 F.R.D. 641 (N.D. Tex. 1978),
    *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980) ................................ 10

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) .............................................................. 5, 14, 15

*Denney & Jenkins & Gilchrist*,
   2005 WL 388562 (S.D.N.Y.) ....................................................................... 21

*Dolgow v. Anderson*,
   43 F.R.D. 472 (E.D.N.Y. 1968) ...................................................................... 3

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...................................................................................... 10

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985) ........................................................................... 8

*Eltman v. Grandma Lee's, Inc.*,
   1986 U.S. Dist. LEXIS 24902 (E.D.N.Y.) ........................................................ 17

*Erie County Retirees Ass'n v. The County of Erie*,
   192 F. Supp. 2d 369 (W.D. Pa. 2002)............................................................... 5

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ....................................................................... 5, 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................. 6, 13

*Hicks v. Morgan Stanley & Co.*,
   2005 WL 2757792 (S.D.N.Y.) ....................................................................... 20

*In re Aetna Inc. Sec. Litig.*,
   2001 U.S. Dist. LEXIS 68 (E.D. Pa.) ..................................................... *passim*

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002) ....................................................................... 14

*In re Cell Pathways, Inc. Sec. Litig. II*,
   2002 U.S. Dist. LEXIS 18359 (E.D. Pa.) .......................................................... 7

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..................................................................... 4, 13

iv

*In re Combustion, Inc. Sec. Litig.,*
    968 F. Supp. 1116 (W.D. La. 1997) ................................................................................ 14

*In re Computron Software,*
    6 F. Supp. 2d 313 (D.N.J. 1998) ................................................................................ 4, 15

*In re Cont'l Ill. Sec. Litig.,*
    962 F.2d 566 (7th Cir. 1992) ........................................................................................ 13

*In re Corel Corp. Sec. Litig.,*
    293 F. Supp. 2d 484 (E.D. Pa. 2003) ..................................................................... *passim*

*In re Crazy Eddie Sec. Litig.,*
    824 F. Supp. 320 (E.D.N.Y. 1993) ............................................................................ 14, 15

*In re Dunn & Bradstreet Credit Servs. Customer Litig.,*
    130 F.R.D. 366 (S.D. Ohio 1990) ................................................................................ 21

*In re Gilat Satellite Networks, Ltd.,*
    2007 WL 2743675 (E.D.N.Y.) ..................................................................................... 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ........................................................................................ *passim*

*In re Greenwich Pharm. Sec. Litig.,*
    1995 U.S. Dist. LEXIS 5717 (E.D. Pa.) ...................................................................... 16

*In re Ikon Office Solutions, Inc., Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ............................................................................... *passim*

*In re King Resources Co. Sec. Litig.,*
    420 F. Supp. 610 (D. Colo. 1976) ........................................................................... 11-12

*In re Lucent Techs., Inc., Sec. Litig.,*
    327 F. Supp. 2d 426 (D.N.J. 2004) ......................................................................... 5, 8, 9

*In re Luxottica Group S.p.a. Sec. Litig.,*
    233 F.R.D. 306 (E.D.N.Y. 2006) ................................................................................. 12

*In re Milken & Assocs. Sec. Litig.,*
    150 F.R.D. 46 (S.D.N.Y. 1993) ................................................................................... 12

*In re NASDAQ Market-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................. 18

*In re Pepsico Sec. Litig.,*
    1985 U.S. Dist. LEXIS 20372 (S.D.N.Y.) ........................................................................ 18

*In re Prudential-Bache Energy Income P'ships Sec. Litig.,*
    1994 U.S. Dist. LEXIS 6621 (E.D. La) ......................................................................... 17-18

*In re Ravisent Techs., Inc. Sec. Litig.,*
    2005 U.S. Dist. LEXIS 6680 (E.D. Pa.) .................................................................... *passim*

*In re Rent-Way Sec. Litig.,*
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ............................................................................ 7, 8

*In re Rite Aid Corp. Sec. Litig.,*
    2005 U.S. Dist. LEXIS 4718 (E.D. Pa.) ........................................................................... 14

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005) ............................................................................................. 16

*In re RJR Nabisco Sec. Litig.,*
    1992 U.S. Dist LEXIS 12702 (S.D.N.Y.) ......................................................................... 16

*In re Safety Components Int'l. Inc. Sec. Litig.,*
    166 F. Supp. 2d 72 (D.N.J. 2001) ............................................................................ *passim*

*In re Sumitomo Copper Litig.,*
    189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................................... 10

*In re Sumitomo Copper Litig.,*
    74 F. Supp. 2d 393 (S.D.N.Y. 1999) ................................................................................ 14

*In re U.S. Bioscience Sec. Litig.,*
    155 F.R.D. 116 (E.D. Pa. 1994) ................................................................................ *passim*

*In re Unisys Corp. Sec. Litig.,*
    2001 U.S. Dist. LEXIS 20160 (E.D. Pa) ..................................................................... 5, 15

*In re Valuevision Int'l Sec. Litig.,*
    957 F. Supp. 699 (E.D. Pa. 1997) ................................................................................... 16

*In re Veeco Instruments Inc. Sec. Litig.,*
    2007 WL 4115808 (S.D.N.Y.) .......................................................................................... 20

*In re Warfarin Sodium Antitrust Litig.,*
    212 F.R.D. 231 (D. Del. 2002) .................................................................................. *passim*

vi

*In re Warner Commc'n. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) ............................................................ *passim*

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................ 7

*In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................... 21

*Int'l Imp. Fund Trustees v. Greenough*,
    105 U.S. 527 (1881) ................................................................................ 4

*J.J. Case Co. v. Borak*,
    377 U.S. 426 (1964) ............................................................................ 4, 18

*Lachance v. Harrington*,
    965 F. Supp. 630 (E.D. Pa. 1997) ........................................................... 5

*Lazy Oil v. Wotco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................................ 9

*Levinson v. Prentice-Hall, Inc.*,
    868 F.2d 558 (3d Cir. 1989) .................................................................. 11

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976) ............................................................... 6, 11

*Miller v. Woodmoor Corp.*,
    1978 U.S. Dist. LEXIS 15234 (D. Colo.) ............................................... 9, 10

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ............................................................................. 13

*Muse v. Dymacol, Inc.*,
    2003 U.S. Dist. LEXIS 21029 (E.D. Pa.) ................................................ 12

*Neuberger v. Shapiro*,
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ..................................................... 15

*Ratner v. Bennet*,
    1996 U.S. Dist. LEXIS 6259 (E.D. Pa.) .................................................. 16

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ......................................................... 11, 12

*Silberman v. Bogle,*
        683 F.2d 62 (3d Cir. 1982) ................................................................. 3

*Slomovics v. All for a Dollar,*
        906 F. Supp. 146 (E.D.N.Y. 1995) ................................................. 15

*Sprague v. Ticonic Nat'l Bank,*
        307 U.S. 161 (1939) ..................................................................... 3, 4

*Vizcaino v. Microsoft Corp.,*
        290 F.3d 1043 (9th Cir. 2002) ....................................................... 14

*Zerkle v. Cleveland-Cliffs Iron Co.,*
        *52* F.R.D. 151 (S.D.N.Y. 1971) .................................................... 11

## OTHER STATUTES AND AUTHORITIES

15 U.S.C. § 78u-(a)(4) ....................................................... 1, 2, 19

15 U.S.C. § 78u-(a)(6) .................................................................5

3 Louis Loss, Securities Regulation, 1819 (2d ed. 1961) .............................17

## I.      NATURE AND STAGE OF PROCEEDINGS

Lead Plaintiffs respectfully move the Court for (i) an award of attorneys' fees of 30% of the $21.5 million settlement fund (or $6,450,000); (ii) reimbursement of $403,395.07 in expenses that plaintiffs' counsel incurred in successfully prosecuting the claims in this action (the "Action"); and (iii) awards to the Lead Plaintiffs in the amount of $15,000 each under 15 U.S.C. § 78u-4(a)(4).

Lead Plaintiffs' fee application is submitted in connection with the final approval of the proposed settlement of this securities class action as noticed to the class pursuant to this Court's April 16, 2008 Order.

## II.     SUMMARY OF THE ARGUMENT

1.      Lead Plaintiffs obtained a settlement of $21.5 million in cash plus interest for the Class (the "Settlement"). The Settlement was achieved only after Plaintiffs' Co-Lead Counsel filed initial and then first and second amended complaints, reviewed and analyzed more than a million pages of documents produced by defendants and third parties, conducted in-depth interviews with eight witnesses including both defendants, opposed motions to transfer venue and for dismissal on the pleadings, moved for and obtained certification of the Class, retained and consulted numerous experts on liability and damages, and participated in a complex and adversarial mediation over the course of a year before a highly respected mediator. At the time of the Settlement, briefing was underway to respond to defendants' summary judgment motion.

2.      The Settlement recovers approximately 13% of class-wide, "best case" damages and is an excellent result, particularly when viewed in light of the risks posed by continued litigation. The Settlement of this heavily litigated Action was accomplished by the aggressive and unwavering efforts of Plaintiffs' Co-Lead Counsel, who dedicated immense time and resources, as well as having the skill and expertise necessary to achieve this excellent result for the Class.

3.      As compensation for the efforts expended to achieve this excellent recovery for the Class, Lead Plaintiffs are applying, on behalf of all of plaintiffs' counsel, for fees of $6,450,000 and reimbursement of plaintiffs' counsels' out-of-pocket expenses in the amount of $403,395.07, all with interest earned at the same rate as the Settlement Fund. The requested fee represents a reasonable percentage of the common benefit consistent with Third Circuit authority and is well within the range of fees that is customarily sought by (and awarded to) experienced counsel in similar contingency fee litigation. The reasonableness of the amount sought is also confirmed by the lodestar cross-check and represents a modest multiplier of approximately 1.52 times the lodestar.

4.      The prosecution of this Action was undertaken by Plaintiffs' Co-Lead Counsel on an entirely contingent basis. Plaintiffs' Co-Lead Counsel, and other counsel under their direction, spent over 8,212 hours prosecuting this action and incurred $403,395.07 in expenses which would not be compensated or reimbursed unless Plaintiffs' Co-Lead Counsel achieved a recovery for the Class.

5.      Additionally, the deadline for objecting to the Settlement and Fee Petition expired on June 30, 2008, without any objections having been submitted. Pursuant to the Court's April 16, 2008 Order preliminarily approving the Settlement (the "Preliminary Approval Order"), approximately 221,000 Notices of Pendency and Proposed Settlement of Class Litigation (the "Notice") were mailed to members and potential members of the Class. *See* Affidavit of Michael Rosenbaum, Managing Director of Berdon Claims Administration LLC, the Claims Administrator in this Action (the "Rosenbaum Affidavit"), ¶ 3. The Notice advised Class members that Plaintiffs' Co-Lead Counsel intends to apply to the Court for an award of attorneys' fees of no more than 30% of the Settlement Fund plus interest, reimbursement of their actual out-of-pocket expenses plus interest, not to exceed $650,000, and awards to Lead Plaintiffs of $15,000 each pursuant to 15 U.S.C. § 78u-4(a)(4). Rosenbaum Affidavit, Ex. A. The lack of any objections further supports the fairness

2

and reasonableness of the fee and expense reimbursement requests.

In summary, the fee sought represents a reasonable percentage of the $21.5 million benefit consistent with Third Circuit authority.

## III.   STATEMENT OF THE FACTS

The relevant facts have been set forth both in the memorandum of law submitted in support of the Settlement (the "Settlement Brief") as well as the Declaration of Robert I. Harwood on behalf of Plaintiffs' Co-Lead Counsel, submitted herewith (the "Harwood Declaration").

## IV.   LEGAL STANDARDS GOVERNING
## THE AWARD OF ATTORNEYS' FEES

### A.   A Reasonable Percentage Of The Fund Recovered
### Is The Appropriate Approach To Awarding Attorneys'
### Fees In Common Fund Cases

For their efforts in creating the Settlement Fund on behalf of the Class, Plaintiffs' Co-Lead Counsel are applying for a fee award on a percentage basis from the fund created. It has long been recognized that a person who maintains a suit that results in the creation of a benefit in which others have a common interest may obtain fees from that common benefit. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Silberman v. Bogle*, 683 F.2d 62, 64 (3d Cir. 1982). *See also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Cent. R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

Courts have also recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on an entire class of persons, and to discourage future misconduct of a similar nature. *See, e.g., Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide

3

"'a most effective weapon in the enforcement'" of the securities laws and are "'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

Courts in this Circuit have consistently adhered to these teachings. *See, e.g., In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 495 (E.D. Pa. 2003) ("When class counsel in a class action recovers a common fund for the benefit of persons other than himself or his client, class counsel should receive an award of attorneys' fees that is fair and reasonable from the fund."); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members."); *In re Computron Software*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) ("Attorneys who represent a class and aid in the creation of a settlement fund are entitled to compensation for legal services offered to the settlement fund under the common fund doctrine.") (citing *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)).

The Supreme Court has consistently held that the percentage of the recovery approach is an appropriate methodology for awarding plaintiffs' counsel's fees in a common fund case. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,'... a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sprague*, 307 U.S. at 164-67; *Cent. R.*, 113 U.S. at 123; *Int'l Imp. Fund Trustees v. Greenough*, 105 U.S. 527, 533 (1881).

## B. The Standard For Approval Of Attorneys' Fees In The Third Circuit

The Third Circuit has held that the percentage of recovery method is the preferred approach for determining attorneys' fee awards in common fund cases. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002); *In re GMC*, 55 F.3d at 821; *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001). District courts in this circuit have been applying the percentage of recovery method to determine fee awards for a number of years. *See, e.g., In re Ravisent Techs., Inc.*

4

*Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at \*36 (E.D. Pa.); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004); *In re Corel*, 293 F. Supp. 2d at 495; *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 378 (W.D. Pa. 2002) (awarding 42% of $350,000 settlement fund*); In re Safety Components Int'l Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001); *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, at \*42 (E.D. Pa.) ("[C]ourts have increasingly used the percentage method."); *Ikon*, 194 F.R.D. at 193 ("In light of [the] fact that this is a 'paradigmatic common fund case' ... the court will apply the percentage method."); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 152 (E.D. Pa. 2000); *Lachance v. Harrington*, 965 F. Supp. 630, 647 (E.D. Pa. 1997) ("[T]he [Third Circuit] has now made it clear that district courts should apply the [percentage of recovery] method of calculating fees in common fund cases ...."). Consistent with the approach taken by the Third and other circuits, the PSLRA supports the use of the percentage of the fund method to determine the reasonableness of fee awards in securities fraud class actions. *See* 15 U.S.C. § 78u-4(a)(6) ("[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class").

The Third Circuit has articulated the following non-exclusive factors for consideration in determining plaintiffs' counsels' fee awards:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.l (3d Cir. 2000); *In re Warfarin*, 212 F.R.D. at 261. *See also In re Ravisent Tech.,* 2005 U.S. Dist. LEXIS 6680, at \*37; *In re Unisys Corp. Sec. Litig.*, 2001 U.S. Dist. LEXIS 20160, at \*10 (E.D. Pa.).

5

As demonstrated below, consideration of the relevant factors supports a fee award of 30% of the Settlement Fund.

### 1.   The Result Achieved and the Number of Persons Benefited

The result achieved and the number of persons benefited are "important" factors to be considered in assessing the reasonableness of the attorneys' fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp. ("Lindy")*, 540 F.2d 102, 112 (3d Cir. 1976) (*en banc*) (the recovery obtained is a factor that the court should consider in assessing a fee request); *In re GMC*, 55 F.3d at 821 ("[T]he court apportions the [settlement] fund...in a manner that rewards counsel for success ....").

The number of persons benefited by this Settlement will in all likelihood be several thousand. The certified Class consists of all persons or entities who acquired Veritas Securities during the period between April 23, 2003 and July 6, 2004, inclusive. Indeed, as noted above, approximately 221,000 Notices were mailed to members and potential members of the Class. Rosenbaum Affidavit, ¶ 6.

As set forth in the accompanying Settlement Brief, $21.5 million is a very favorable result for the Class in light of the considerable risks related to proof of liability and damages. *See* Settlement Brief at 14-23. Plaintiffs' Co-Lead Counsel also recognized that proving at trial that the defendants' statements were materially false and misleading entailed great risk, and that there was a significant likelihood that, even if defendants' liability could be established at trial, the Class could collect less than the settlement amount, or nothing at all. *See id.*

The Settlement was also achieved with the assistance of an experienced mediator, Jonathan Marks, through multiple telephonic and in-person mediation sessions over the course of a year. *See* Harwood Declaration at ¶¶ 35-42. The assistance of a mediator skilled in securities fraud class

actions assured that negotiations were conducted at arm's length and that the recovery was fair. Accordingly, while plaintiffs believe that the Settlement would be a very good recovery under any circumstance, in light of the risks of the litigation and considering the present value of money and the probability of lengthy litigation in the absence of a settlement, Co-Lead Counsel respectfully submit that the Settlement is an excellent result that is fair, reasonable, and adequate and which could not have been achieved without the efforts and persistence of Plaintiffs' Co-Lead Counsel.

### 2. The Reaction of the Class as a Whole Confirms That the Request for Fees is Reasonable

In response to the dissemination of nearly 221,000 Notices, the publication of a Summary Notice in *Investors Business Daily* and on *PR Newswire* in addition to being published on www.berdonclaimsllp.com and the respective websites of Co-Lead Counsel, there have been no objections and only 4 requests for exclusion from the Class. This supports the instant application. *See, e.g., Ravisent Tech.*, 2005 U.S. Dist. LEXIS 6680, at *39-40; *In re Cell Pathways, Inc. Sec. Litig. II*, 2002 U.S. Dist. LEXIS 18359, at *24 (E.D. Pa.) (existence of only one objection shows that class does not object to thirty percent requested by attorneys and supports approval of fee petition); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 502 (W.D. Pa. 2003) (finding absence of substantial objections supports award of requested fee); *Aetna*, 2001 U.S. Dist. LEXIS 68, at *48 ("[T]he Class members' view of the attorneys' performance, inferred from the lack of objections to the fee petition, supports the fee award.").

### 3. The Skill and Efficiency of the Attorneys Involved

The best evidence of the quality of class counsel's representation is the result achieved. Indeed, the $21.5 million cash Settlement is a testament to plaintiffs' Co-Lead Counsel's skill and expertise. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 357-58 (S.D.N.Y. 2005) (evaluating quality of representation by reference to the substantial risks faced by counsel, which

7

"obtained remarkable settlements for the Class while facing formidable opposing counsel from some of the best defense firms in the country"); *In re Lucent*, 327 F. Supp. 2d at 437 ("the result itself evidences counsel's skill and efficiency").

Plaintiffs' Co-Lead Counsel have national standing and are among the most experienced securities lawyers in the country.[1] Few lawyers would have had the experience, professionalism, and knowledge to negotiate this Settlement under the circumstances, where defendants maintained an aggressive posture throughout the litigation. *See* Harwood Declaration at ¶¶ 24-28; 35-42.

The Third Circuit recognizes "the stated goal in percentage fee-award cases of ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation." *Gunter*, 223 F.3d at 198 (other citations omitted). *See also Rent-Way*, 305 F. Supp. 2d at 515 (quoting *Gunter*, 223 F.3d at 198); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (effectiveness of the securities laws may depend in large measure on the application of the class action device).

Plaintiffs' Co-Lead Counsel effectively and efficiently litigated this Action from its inception. Substantial, ongoing effort spanning a period of more than four years was required to achieve this Settlement. Among other things, Plaintiffs' Counsel were required to: (a) prepare and file the initial as well as the first and second amended complaints; (b) oppose a motion to transfer venue and a motion for reconsideration of the same; (c) review and analyze over a million pages of documents produced by defendants and third parties; (d) take and defend numerous depositions and interviews; (e) oppose a motion to dismiss; (f) brief a class certification motion and respond to class discovery; (g) engage in an arm's-length mediation over the course of a year which was conducted by a highly respected mediator and involved numerous and voluminous submissions as well as

---

1       The experience of Plaintiffs' Co-Lead Counsel is set forth in their affidavits filed contemporaneously herewith.

telephonic and in-person sessions; and (h) commence briefing on a motion for summary judgment.

This Settlement could not have been achieved without the concentrated efforts of Plaintiffs' Co-Lead Counsel.

Moreover, Lead Counsel's efforts in efficiently bringing this litigation to such a successful conclusion are the best indicator of the experience and ability of the attorneys involved. *See, e.g., Behrens v. Wometco Enterp., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("[t]he quality of work performed in a case that settles before trial is best measured by the benefit obtained"), *aff'd*, 899 F.2d 21 (11th Cir. 1990). By any measure, Plaintiffs' Co-Lead Counsels' efforts have resulted in a significant settlement for the benefit of the Class.

In addition, the quality of opposing counsel also is important in evaluating the quality of services rendered by Plaintiffs' Co-Lead Counsel. *See, e.g., Lucent Techs.*, 327 F. Supp. 2d at 456; *Lazy Oil v. Wotco Corp.*, 95 F. Supp. 2d 290, 322 (W.D. Pa. 1997); *Aetna*, 2001 U.S. Dist. LEXIS 68, at *45-46; *Ikon*, 194 F.R.D. at 195; *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Defendants were represented by Potter Anderson & Corroon LLP and Wilson Sonsini Goodrich & Rosati, nationally recognized and extremely able defense firms that vigorously defended their clients. The ability of Plaintiffs' Co-Lead Counsel to obtain a very favorable Settlement for the Class in the face of such formidable legal opposition further evidences the superior quality of their work. Therefore, this Court should find that the professional skill exercised by the Plaintiffs' Co-Lead Counsel in this case is beyond question and supports approval of the requested award.

## 4.    The Complexity, Difficulty and Duration of the Litigation

Courts have long recognized that the novelty and difficulty of the issues in a case are significant factors in determining a fee award.[2] From the outset, this Action was a difficult and

---

2    As noted in *Miller v. Woodmoor Corp.*, prosecution of any class action in the securities area presents inherently complex and novel issues:

highly uncertain securities case, with no assurance that it would survive motions to dismiss or motions for summary judgment or that it would succeed at trial or on appeal. In addition to being factually complex, the case involved complex and unsettled legal questions such as issues of loss causation and economic loss.[3] *See Corel*, 293 F. Supp. 2d at 496 (noting that shareholder securities litigation is a complex field).

Most importantly, establishing scienter at trial posed an extremely difficult task. Plaintiffs also had the difficult task of establishing loss causation and damages in light of the Supreme Court's opinion in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). As detailed in the Settlement Brief, Plaintiffs faced considerable risks in establishing liability that were articulated in Defendants' motions to dismiss and for summary judgment. These hurdles included, *inter alia*, proving materiality and that defendants acted with *scienter* with respect to the accounting claims, establishing that defendants had actual knowledge that the forecasts at issue were false when made as well as

---

> Despite years of litigation, the area of securities law has gained little predictability. There are few "routine" or "simple" securities actions. Courts are continually modifying and/or reversing prior decisions in an attempt to interpret the securities laws in such a way as to follow the spirit of the law while adapting to new situations which arise. Indeed, many facets of securities law have taken drastically new directions during the pendency of this action.

1978 U.S. Dist. LEXIS 15234, at *11-12 (D. Colo.); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) ("'[C]lass action suits' in general 'have a well-deserved reputation as being most complex.' ... [F]ederal courts, including this Court, 'have long recognized that [securities class actions are] notably difficult and notoriously uncertain.'") (internal citations omitted).

   3    Even before the passage of the PSLRA, courts had noted that a securities case "by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980). *See also Miller*, 1978 U.S. Dist. LEXIS 15234, at *11-12 ("The benefit to the class must also be viewed in its relationship to the complexity, magnitude and novelty of the case... . Despite years of litigation, the area of securities law has gained little predictability. There are few 'routine' or 'simple' securities actions."). Since the passage of the PSLRA, these actions have become even more difficult as pleading standards have been heightened, discovery is delayed and cases are dismissed more often.

10

difficulties in proving loss causation and damages. *See* Settlement Brief at IV B.2(d). In addition, due to the complex nature of the accounting claims and the development of those claims through discovery, there remained the real possibility that Plaintiffs would need to amend their pleadings a third-time which would likely have set off an renewed round of motions to dismiss with an uncertain result. In any event, because of their complexity, Plaintiffs' claims would have required multiple experts to establish not only damages but a myriad of multifaceted accounting issues. Although it is always difficult to predict how a jury would react to an inevitable battle of the experts, the greater the complexity of the issues, the more unpredictable the result. Harwood Declaration, at ¶¶ 32-34.

Compounding all of those risks, is that, in all likelihood, any successful outcome would have been appealed.

### 5. The Risk of Nonpayment

Numerous cases have recognized that risk of nonpayment is another important factor in determining the fee award. *See, e.g., Lindy*, 540 F.2d at 117; *Ikon*, 194 F.R.D. at 194. Although there was little doubt about the ability of defendants to pay, the risk of not recovering anything for the Class as a result of a dismissal or unfavorable verdict at trial is relevant in determining risk. *Lindy*, 540 F.2d at 117; *Ikon*, 194 F.R.D. at 194. Courts have recognized the substantial risk involved in prosecuting securities class actions.[4] As the court observed in *In re King Res. Co. Sec. Litig.*:

---

4       *See Zerkle v. Cleveland-Cliffs Iron Co., 52* F.R.D. 151, 159 (S.D.N.Y. 1971) ("[stockholder litigation is notably difficult and unpredictable"); *Robbins v. Koger Props., 116 F.3d* 1441 (11th Cir. 1997) (jury damages award of over $81 million for plaintiffs reversed on appeal for failure to prove loss causation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) *(en banc)* (after jury verdict in favor of Plaintiff and the Class, reversing the district court's denial of judgment for defendants n.o.v. and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.,* 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned); *Bentley v. Legent Corp.,* 849 F. Supp. 429 (E.D. Va. 1994) (dismissed after Plaintiffs' presentation of case at trial); *Am. Bearing Co. v. Litton Indus., Inc.,* 540 F. Supp. 1163 (E.D. Pa. 1982), *appeal after remand,* 729 F.2d 943 (3d Cir.), *cert. denied,* 469 U.S. 854 (1984) (new trial ordered on $2.9 million antitrust judgment entered on jury verdict; ultimate judgment for defendant affirmed by Court of Appeals).

> The litigation also involved unique . . . difficult, complex and oft-disputed class action questions, and difficult questions regarding computation of damages.
>
> * * *
>
> In evaluating the services rendered in this case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in undertaking the litigation. The prospects of success were by no means certain at the outset, and indeed, the chances of success were highly speculative and problematical.

420 F. Supp. 610, 632, 636-37 (D. Colo. 1976). *Accord Ikon*, 194 F.R.D. at 194 ("[S]ecurities actions have become more difficult from a plaintiffs' perspective in the wake of the PSLRA.").

In fact, Plaintiffs' Co-Lead Counsel could have prosecuted this through trial (and the inevitable appeals that would follow) and, at the end of the day, recover nothing for the Class. *See Muse v. Dymacol, Inc.*, 2003 U.S. Dist. LEXIS 21029, at *5-6 (E.D. Pa.) ("[s]ettlement . . . will avoid delay in realizing benefit for the affected class members, and will avoid unnecessary litigation costs"); *Aetna*, 2001 U.S. Dist. LEXIS 68, at *22 ("The risk of delay could have deleterious effects on any future recovery"). Indeed, in complex cases such as this, even a victory at trial does not guarantee ultimate success.[5]

---

5 As stated in *In re Warner Commc'ns Sec. Litig.*:

> Even a victory at trial is not a guarantee of ultimate success. If Lead Plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such judgment An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

618 F. Supp. at 747-48 (citing numerous examples); *see Robbins,* 116 F.3d at 1446-49 (reversing $81 million jury verdict for Plaintiffs in securities class action after five years of litigation); *In re Luxottica Group S.p.a. Sec. Litig.,* 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("'Victory - even at the trial stage - is not a guarantee of ultimate success.' Delay at the trial stage and through post-trial motions and the appellate process might have forced class members to wait years longer for any recovery. This would have increased the amount of fees payable to plaintiffs' counsel and reduced the value of any award to the class.") (citing *In re Milken & Assocs. Sec. Litig.,* 150 F.R.D. 46, 53 (S.D.N.Y. 1993)).

12

In short, in the absence of the Settlement, the Class could have recovered less than the Settlement, or nothing at all. Against this backdrop, Plaintiffs' Co-Lead Counsel negotiated and achieved an excellent Settlement for the Class.

### 6.    The Requested Percentage Fee is Fair and Reasonable When Checked Against the Amount of Time Devoted to the Case

Courts in this Circuit, though not required, often conduct a lodestar/multiplier cross-check calculation based upon the time expended by counsel multiplied by their current hourly rate. *See, e.g., Cendant,* 264 F.3d at 221, 284-85; *In re Warfarin,* 212 F.R.D. at 263 (citing *Gunter,* 223 F.3d at 195 n.1). If this Court were to analyze the fee request by using the lodestar method, Plaintiffs submit that the requested fee is still eminently reasonable and appropriate.

In calculating a fee under the lodestar/multiplier approach, the Court must first determine the lodestar by multiplying the hours reasonably spent by a particular attorney or paralegal by their respective current market billing rate and then totaling those figures. *See Aetna,* 2001 U.S. Dist. LEXIS 68, at *42, 48. Counsel's out-of-pocket expenses are not included in the lodestar calculation. *Id.* The hourly billing rate to be applied is the "market rate," that is the hourly rate that is normally charged in the community where counsel practices for cases of this sort - complex class action securities litigation. *See, e.g., Blum,* 465 U.S. at 895; *Hensley,* 461 U.S. at 447 ("market standards should prevail"); *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."). The current, not historical, hourly rate is used in order to compensate for inflation and loss of use of funds. *Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989).

Here, plaintiffs' counsel spent more than 8,200 hours for a total lodestar of more than $4,220,000. Harwood Declaration at ¶ 56. The work was performed by and under the direction of Plaintiffs' Co-Lead Counsel without duplication of effort. Each of the constituent firms has filed an

affidavit computing the lodestars, at current rates, for each attorney at these respective law firms.

Due to the contingent nature of representative litigation, courts almost always adjust the lodestar figure upward by applying a "multiplier" based on the quality of counsel's work and the results achieved. *See Aetna*, 2001 U.S. Dist. LEXIS 68, at \*48. Here, the requested fee of 30% constitutes a modest lodestar multiplier of approximately 1.52. Such a request is at the lower end of the range of multipliers typically awarded in comparable cases in this Circuit and across the United States.[6]

The Settlement confers a real and immediate benefit to the Class; the counsel involved on both sides of the litigation were of the highest caliber; and the entire undertaking by Plaintiffs' Co-Lead Counsel was fully contingent and carried a genuine risk of non-recovery. The magnitude and complexity of the litigation is indisputable, and the time and effort invested by Plaintiffs' Co-Lead Counsel is significant. Under the circumstances, accepting the requested percentage fee of 30%, with a lodestar multiplier of approximately 1.52, is extremely reasonable.

---

6      *See In re Rite Aid Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 4718 (E.D. Pa.) (Dalzell, J.) (lodestar multiplier of 6.96); *Aetna*, 2001 U.S. Dist. LEXIS 68, at \*49 (lodestar multiplier of 3.6); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (lodestar multiplier of 4.3); *Safety Components*, 166 F. Supp. 2d at 104 ("a [lodestar] multiplier of 2.81 appears reasonable"); *Cullen*, 197 F.R.D. at 150 (lodestar multiplier of 2.04); *Ikon*, 194 F.R.D. at 195 (lodestar multiplier of 2.7); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) (lodestar multiplier of 2.5); *Behrens*, 118 F.R.D. at 549 ("Most lodestar multiples awarded in cases like this are between 3 and 4."), *aff'd,* 899 F.2d 21 (11th Cir. 1990). *See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-55 (9th Cir. 2002) (surveying attorney fee awards and multipliers in common-fund cases with \$50-200 million settlements from 1996 to 2001); *In re Combustion, Inc. Sec. Litig.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (noting that multipliers between 3 and 4.5 have been common).

### 7. The Requested Fee is Customarily Awarded in the Third Circuit and Elsewhere in Similar Contingency Fee Litigation

There is no general rule as to what percentage of the common fund should be awarded as attorneys' fees. The Third Circuit has observed that fee awards range from 19% to 45% of the settlement fund. *GMC*, 55 F.3d at 822. *See also Ikon*, 194 F.R.D. at 194 ("percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent"); *Computron*, 6 F. Supp. 2d at 322 ("there is no set standard, however, on how to determine a reasonable percentage. Awards utilizing the percentage-of-recovery method can range from nineteen percent to forty-five percent of a settlement fund... [T]he percentage awarded, should, and generally does, increase commensurate with increased quality of representation."); *Slomovics v. All for a Dollar*, 906 F. Supp. 146, 151 (E.D.N.Y. 1995); *Crazy Eddie*, 824 F. Supp. at 326.

Here, plaintiffs' counsel are seeking a fee award of 30% of the Settlement Fund. In that regard, numerous courts within the Third Circuit have granted such awards. *See, e.g.*,

*In re Ravisent Tech.*, 2005 U.S. Dist. LEXIS 6680, at *51 (awarding 33 $^{1}/_{3}$% of the $7 million settlement fund).

*Bell v. Fore Syst.*, 2003 U.S. Dist. LEXIS 26676, at *6 (W.D. Pa.) (awarding 33 $^{1}/_{3}$% of $11,700,000 settlement fund).

*Corel*, 293 F. Supp. 2d at 498 (awarding 43% of $7 million settlement fund).

*Unisys*, 2001 U.S. Dist. LEXIS 20160 (awarding 33 $^{1}/_{3}$% of $5,750,000).

*Ikon*, 194 F.R.D. 166 (30% of $111 million recovery).

*Aetna*, 2001 U.S. Dist. LEXIS 68, at *50 (awarding 30% of $82.5 million recovery).

*In re Safety Components Int'l*, 166 F. Supp. 2d at 100, (considering examples of fee awards in common fund cases in the Third Circuit and finding reasonable requested award of 33% plus interest and expenses).

*Cullen*, 197 F.R.D. at 152 (awarding 33% of settlement fund plus expenses).

*Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000) (awarding 33 $^{1}/_{3}$% of $4,325,000 settlement).

15

> *In re Greenwich Pharm. Sec. Litig.,* 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa.) (awarding 33 $^1/_3$% of settlement fund plus expenses).

> *Blackman v. O'Brien Envtl. Energy, Inc.*, 1999 U.S. Dist. LEXIS 7160, at *7 (E.D. Pa.) (35%).

> *In re Valuevision Int'l Sec. Litig.*, 957 F. Supp. 699, 700 (E.D. Pa. 1997) (34%).

> *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. 116, 120 n.10 (E.D. Pa. 1994) (awarding 30% of $5,250,000 settlement fund).

> *Ratner v. Bennet*, 1996 U.S. Dist. LEXIS 6259, at *28 (E.D. Pa.) (awarding 35% of settlement fund, plus interest and expenses).

A recent analysis by Professor John C. Coffee demonstrated:

> (1) an average percentage recovery of 31 % in securities class actions involving settlements greater than $ 10 million; (2) a range of median rates from 27% to 30% over the course of a two year period in selected federal district courts; and (3) percentage recoveries between 25% and 30% were 'fairly standard' in 'mega fund' class actions involving settlements between $100 million and $200 million.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298 (3d Cir. 2005).

Additionally, granting the requested fee based on the percentage method is also entirely consistent with (and indeed is intended to mirror practice in) the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. As explained in *In re RJR Nabisco Sec. Litig.*,:

> What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.

1992 U.S. Dist LEXIS 12702, at *20 (S.D.N.Y.). If this were a non-class action litigation, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See, e.g., Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, Plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."). *Accord Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of

whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to

the recovery.") (concurring opinion); *In re U.S. Bioscience Sec. Litig.*, 155 F.R.D. at 119 (adopting

Special Master's conclusion that 30% would likely have been negotiated in securities action).

## V.      PUBLIC POLICY CONSIDERATIONS SUPPORT THE REQUESTED FEE

The federal securities laws are remedial in nature and, in order to effectuate their purpose of

protecting investors, private lawsuits are to be encouraged. *See Basic Inc. v. Levinso*n, 485 U.S. 224

(1988); *Bateman Eichler*, 472 U.S. at 299. Indeed, the ultimate effectiveness of these remedies may

largely depend on the efficacy of the class action device. 3 Louis Loss, Securities Regulation, 1819

(2d ed. 1961). As one court has noted:

> Private lawsuits serve to further the objective of the federal securities
> laws which is to protect investors and consumers against fraudulent
> and other deceptive practices. As a practical matter, those lawsuits
> can be maintained only if competent counsel can be obtained to
> prosecute them. Competent counsel can be obtained if reasonable and
> adequate compensation for the services were awarded if a successful
> result is achieved. "To make certain that the public is represented by
> talented and experienced trial counsel, the remuneration should be
> both fair and rewarding. The concept of a private attorney acting as a
> 'private attorney general' is vital to the continued enforcement and
> effectiveness of the Securities Acts."

*Eltman v. Grandma Lee's, Inc.*, 1986 U.S. Dist. LEXIS 24902, at *25 (E.D.N.Y.) (citations omitted);

*In re Warner Commc'n*, 618 F. Supp. at 750-51 ("Fair awards in cases such as this encourage and

support other prosecutions, and thereby forward the cause of securities law enforcement and

compliance."). Similarly, in *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, the court

noted:

> In complex securities class actions and shareholder derivative
> litigation, able counsel for plaintiffs can be retained only on a
> contingent basis. A large segment of the investing public would be
> denied a remedy for violations of the securities laws and breach of
> fiduciary duty by public companies and those entrusted with their

17

> stewardship if contingent fees awarded by the courts did not fairly
> and adequately compensate counsel for the services provided, the
> serious risks undertaken and the delay before any compensation is
> received. Filing of contingent lawsuits in this connection should not
> be chilled by the imposition of fee awards which fail to adequately
> compensate counsel for the risks of pursuing such litigation and the
> benefits which would not otherwise have been achieved but for their
> persistent and diligent efforts.

1994 U.S. Dist. LEXIS 6621, at *20-21 (E.D. La.). *See also GMC*, 55 F.3d at 801 ("large attorneys'

fees serve to motivate capable counsel to undertake these actions").

The Honorable Abraham Sofaer, Southern District of New York, has also succinctly stated

the reasons for providing a substantial financial incentive for capable counsel in securities class

actions:

> It unquestionably is true that without able lawyers handling these
> matters not only do some of them go unprosecuted, but the big
> difference in my experience is in the amount obtained, and you don't
> get the highest recovery when you are paying at the low end of the
> scale of fee recovery in contingent actions. It seems to me that I as the
> protector of the class can fairly say, and honestly say, that I believe it
> is in the class's best interests - of this class and of future classes yet
> unknown - to pay this kind of money for these kinds of benefits.

*In re Pepsico Sec. Litig.*, 1985 U.S. Dist. LEXIS 20372 (S.D.N.Y.), Transcript of April 26, 1985 at

17-18, as quoted with approval in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465,

487 (S.D.N.Y. 1998). *See also U.S. Bioscience*, 155 F.R.D. at 118.

The Supreme Court has also emphasized that private actions provide "'a most effective

weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC]

action.'" *Bateman Eichler*, 472 U.S. at 310 (quoting *J.I. Case*, 377 U.S. at 432). Private attorneys

should be encouraged to take the risks required to represent those who would not otherwise be

protected from securities fraud. Accordingly, an award of the fees requested herein would be fully

consistent with important public policy considerations.

18

VI.    **PLAINTIFFS' COUNSEL ARE ENTITLED TO BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES**

Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses and costs from the fund. *See Aetna*, 2001 U.S. Dist. LEXIS 68, at *40; *Ikon*, 194 F.R.D. at 192; *In re Corel*, 293 F. Supp. 2d at 498. Plaintiffs' Co-Lead Counsel are seeking reimbursement of costs and expenses in an aggregate amount of $403,395.07 for prosecuting this Action on behalf of the Class. These expenses were incurred on an ongoing basis for such items as photocopying of documents, mediation costs, court filing fees, deposition transcripts, expert fees, on-line research, messenger service, postage, express mail and next day delivery, long distance and facsimile expenses, transportation, travel and other incidental expenses directly related to the prosecution of this Action. *See* Harwood Declaration at ¶ 58.

Accordingly, plaintiffs' counsel respectfully request reimbursement for these reasonable expenses.

VII.    **LEAD PLAINTIFFS ARE ENTITLED TO AN AWARD OF REASONABLE COSTS AND EXPENSES DIRECTLY RELATING TO THE REPRESENTATION OF THE CLASS**

The PSLRA provides for an award of reasonable costs and expenses directly relating to the representation of the class to any representative party serving on behalf of a class. 15 U.S.C. § 78u-(a)(4). Accordingly, lead plaintiffs seek a modest award of $15,000 in connection with the prosecution of this litigation to compensate them for their reasonable costs and expenses incurred in managing this litigation and representing the Class.

Indeed, over the last four years, Mr. Tay and Mr. Leonov have put forth extraordinary efforts in their role as lead plaintiffs and have invested significant time and resources in that regard. As detailed in their respective declarations, Mr. Tay and Mr. Leonov performed various duties in furtherance of their fiduciary obligations to the Class, including: (a) reviewing and commenting on

19

numerous pleadings and briefing on various motions; (b) reviewing and commenting upon various discovery requests as well as reviewing and commenting upon a number of specific documents produced by defendants; (c) providing counsel with invaluable insight based on their respective professional experience; (d) engaging in numerous telephonic and email communications with counsel and each other throughout the course of the litigation to discuss all aspects of the case; (e) complying with Defendants' document requests and interrogatories as well as reviewing, compiling and producing their own personal financial records for production; (f) significant traveling, including Mr. Tay's traveling from his residence in Singapore to New York City to meet with counsel and sit for a deposition in connection with Plaintiffs' Motion for Class Certification and Mr. Leonov's traveling to New York City for a mediation session in addition to attending a number of witness interviews in California; (g) actively participating in discussions concerning mediation and the appropriate settlement value of the litigation; and (h) reviewing and commenting up the various drafts of the Settlement Agreement and supporting papers. In all, Mr. Tay and Mr. Leonov spent hundreds of hours of their own time in connection with the above-described activities on behalf of the Class.

Awards have been made to lead plaintiffs in numerous cases. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *12 (S.D.N.Y.) (Awarding $15,964.20, including $125.00 in out of pocket expenses to the named plaintiff.); *In re Gilat Satellite Networks, Ltd.,* 2007 WL 2743675, at *19 (E.D.N.Y.) (quoting *Hicks v. Morgan Stanley & Co.,* 2005 WL 2757792, at *10 (S.D.N.Y.) (Noting that awards to plaintiffs "to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.")).

In *In re Xcel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005), the court explained, in awarding $100,000 collectively to the lead plaintiff group, the important policy considerations involved in encouraging enforcement of the federal securities laws by shareholders:

> In granting compensatory awards to the representative plaintiff in PSLRA class actions, courts consider the circumstances, including the personal risks incurred by the plaintiff in becoming a lead plaintiff, the time and effort expended by that plaintiff in prosecuting the litigation, any other burdens sustained by that plaintiff in lending himself or herself to prosecuting the claim, and the ultimate recovery. *Denney v. Jenkens & Gilchrist*, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005). Furthermore, courts consider not only the efforts of the representative plaintiffs in pursuing claims, but also the important policy role they play in the enforcement of the federal securities laws on behalf of persons other than themselves. *See In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two class representatives $55,000 and three class representatives $35,000 each). Such enforcement is vital because if there were no individual shareholders willing to step forward and pursue a claim on behalf of other investors, many violations of law might go unprosecuted.

The Notice advised class members that Lead Plaintiffs would seek an award of up to $15,000 each. No class member has objected to such request.

Therefore, Plaintiffs' Co-Lead Counsel request that the Court award $15,000 to each Lead Plaintiff for the time expended in connection with the prosecution of this litigation, including investigation of the claims, response to discovery requests, including depositions, and monitoring the settlement phase.

## VIII.    CONCLUSION

The Settlement of this Action for $21.5 million in cash plus interest is the culmination of the diligent and skillful efforts of Plaintiffs' Co-Lead Counsel. For these efforts, Plaintiffs' Co-Lead Counsel respectfully request that the Court approve and enter an Order for an award of (i) attorneys'

21

fees in the amount of $6,450,000, and reimbursement of plaintiffs' counsels' expenses in the amount of $403,395.07, plus interest at the same rate as that earned by the Class; and (ii) $15,000 for each of the Lead Plaintiffs.

**HARWOOD FEFFER LLP**
Robert I. Harwood
Jeffrey M. Norton
488 Madison Avenue
New York, NY 10022
Tel: (212) 935-7400

**LABATON SUCHAROW LLP**
Ira A. Schochet
David J. Goldsmith
140 Broadway
New York, NY 10005
Tel: (212) 907-0700

**IZARD NOBEL LLP**
Jeffrey S. Nobel
Seth R. Klein
Andrew M. Schatz (of counsel)
20 Church Street, Suite 1700
Hartford, CT 06103
Tel: (860) 493-6292

*Co-Lead Counsel for Lead Plaintiffs and the Class*

**ROSENTHAL, MONHAIT & GODDESS, P.A.**

By: _____
      Norman M. Monhait (#1040)
      919 Market Street, Suite 1401
      Citizens Bank Center
      P.O. Box 1070
      919 Market Street
      Wilmington, DE 19899-1070
      (302) 656-4433
      Email: nmonhait@rmgglaw.com

*Liaison Counsel for Lead Plaintiffs and the Class*

July 24, 2008

22