IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE VERITAS SOFTWARE CORP. SECURITIES LITIGATION | : : : : : | Case No: 04-CV-831 (SLR) Consolidated Action |
| | : : | |
| This Document Relates to: ALL ACTIONS | : : : : | |

**DECLARATION OF ROBERT I. HARWOOD IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT, LEAD COUNSEL'S APPLICATION FOR AN AWARD FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND LEAD PLAINTIFFS' APPLICATION FOR AN AWARD TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. § 78U-4(A)(4)**

ROBERT I. HARWOOD declares as follows:

1. I am a member of Harwood Feffer LLP, formerly known as Wechsler Harwood LLP ("Harwood Feffer"). My firm together with Izard Nobel LLP, formerly known as Schatz Nobel Izard P.C. ("Izard Nobel") and Labaton Sucharow LLP, formerly known as Goodkind Labaton Rudoff & Sucharow LLP ("Labaton Sucharow"), are co-lead counsel in this securities class action (collectively, "Lead Counsel").

2. As set forth below, Lead Counsel were selected by Lead Plaintiffs Tay Siew Choon and Mark Leonov and appointed by the Court to represent plaintiffs in this class action litigation (the "Litigation"). Except where otherwise specified, the contents

of this Declaration are based upon my personal knowledge and upon review of the official docket and other pleadings in the Litigation.[1]

3. I submit this declaration in support of Lead Plaintiffs' application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for approval of: (a) the Stipulation for a cash settlement of behalf of the Settlement Class of $21,500,000 (plus accrued interest) (the "Settlement Fund"); (b) the Proposed Plan of Allocation; (c) Lead Counsel's application for attorneys' fees and expenses; and (d) Lead Plaintiffs' Expense Application. The settlement resolves all claims asserted by Lead Plaintiffs and the class in this action against The Veritas Software Corporation ("Veritas") and Edwin J. Gillis and Gary Bloom (the "Individual Defendants" and, with Veritas, the "Defendants").

### The Filing and Initial Stages of the Litigation

4. This action was commenced against Defendants on July 7, 2004, alleging that Veritas had issued a materially misleading press release regarding expectations on revenue and earnings for the second quarter of 2004, in violation of the Securities Exchange Act of 1934 (the "Exchange Act"). (D.I. 1) Additional class action complaints against Veritas were filed on July 15 and 16, 2004.

5. On September 3 and 7, 2004, various movants filed competing motions for consolidation of the three actions against Veritas and for appointment of lead plaintiff and lead counsel. (D.I. 16-24) On September 23, 2004, the movants notified the Court that they had agreed to consolidation and a lead counsel structure, and submitted a proposed order to the Court appointing Tay Siew Choon and Mark Leonov as Lead

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the Stipulation of Settlement (the "Stipulation"), previously filed with the Court on April 8, 2008.

Plaintiffs and Izard Nobel, Harwood Feffer and Labaton Sucharow as co-Lead Counsel. (D.I. 27-28)

6. During the pendency of the above process, Defendants, on July 19, 2004, moved pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Northern District of California, where Veritas is headquartered. (D.I. 4-7) Izard Nobel, Harwood Feffer and Labaton Sucharow filed an opposition brief on August 16, 2004 (D.I. 13), and Defendants filed a reply brief on August 20, 2004 (D.I. 14).

7. The Court denied Defendants' motion to transfer on January 14, 2005 (D.I. 31). Defendants moved for reconsideration on January 24, 2005 (D.I. 33), which Lead Counsel opposed on February 7, 2005 (D.I. 37). The Court denied Defendants' motion for reconsideration on March 2, 2005. (D.I. 45)

8. On March 3, 2005, the Court approved the proposed Lead Plaintiffs and Lead Counsel structure and additionally appointed Rosenthal, Monhait & Goddess, P.A., formerly known as Rosenthal, Monhait, Gross and Goddess, P.A. ("Rosenthal Monhait") as Liaison Counsel. (Unnumbered docket entries.)

### The Amended Complaints and the Motion to Dismiss

9. Upon their appointment, Lead Counsel conducted an extensive investigation, including interviews of sixteen (16) former Veritas employees.

10. On May 27, 2005, Lead Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Amended Complaint") asserting claims under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, against Defendants Veritas, Bloom, Gillis and an additional defendant, John Brigden, the Company's senior vice president and general counsel. (D.I. 52)

11. In addition to the claims asserted in the initial complaint concerning Veritas' revenue and earnings forecasts for the second quarter of 2004 (the "Forecast Claims"), the Amended Complaint alleged that the Company's financial statements during the Class Period were materially false and misleading (the "Accounting Claims").

12. On July 20, 2005, Defendants moved to dismiss the Amended Complaint pursuant to various provisions of the PSLRA and Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 53-57) In their motion, Defendants argued the Lead Plaintiffs failed to adequately allege any actionable misstatement or that Defendants acted with scienter with regard to the Forecast Claims and also failed to adequately allege a false statement, loss causation, or scienter with regard to the Accounting Claims.

13. Lead Plaintiffs filed their opposition to Defendants' motion to dismiss on September 7, 2005. (D.I. 58). Defendants filed a reply brief on October 7, 2005. (D.I. 61, 63)

14. On May 23, 2006, the Court denied Defendants' motion to dismiss in its entirety. (D.I. 65-66)

15. Defendants filed their answer to the Amended Complaint on June 7, 2006.

16. On August 23, 2006, the parties stipulated that Lead Plaintiffs be allowed to file a Second Consolidated Amended Class Action Complaint (hereafter, the "Complaint") in order to refine the definition of the putative class. (D.I. 84) The Court approved the stipulation on August 31, 2006 (unnumbered docket entry), and Lead Plaintiffs filed the Complaint (which remains the operative complaint) on September 5, 2006 (D.I. 86). Defendants filed their answer on September 22, 2006. (D.I. 88)

### Class Discovery and Class Certification

17. On July 5, 2006, Defendants served their First Set of Document Requests and First Set of Interrogatories on Lead Plaintiffs. (D.I. 72)

18. Lead Plaintiffs made their Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on July 18, 2006. (D.I. 77)

19. Lead Plaintiff Tay Siew Choon responded to Defendants' interrogatories and produced responsive documents on or about July 26, 2006. (D.I. 79-80) Lead Plaintiff Mark Leonov responded to Defendants' interrogatories and produced responsive documents on or about September 15, 2006. (D.I. 87)

20. Lead Plaintiff Tay Siew Choon traveled from Singapore and sat for a seven hour deposition conducted by Defendants' counsel in New York City on July 22, 2006.

21. After conducting discovery on Lead Plaintiffs, Defendants agreed to stipulate to class certification. On October 20, 2006, the parties jointly submitted a proposed order to the Court certifying a class of all individuals and entities that purchased or otherwise acquired positions in Veritas publicly traded securities, including, but not limited to, those individuals and entities that sold put options and bought call options, during the period between April 23, 2003 and July 6, 2004, inclusive. (D.I. 89-90) The Court approved the stipulation and ordered the class certified on October 25, 2006 (unnumbered docket entry).

### Pre-Mediation Merits Discovery

22. On June 23, 2006, Lead Plaintiffs served their first request for the production of documents. (D.I. 71)

23. Defendants served their initial disclosures pursuant to Fed. R. Civ. P. 267(a)(1) on July 20, 2006. (D.I. 78) On or about July 27, 2006, Defendants served their responses to Lead Plaintiffs' first request for the production of documents. (D.I. 81-82) Defendants thereafter produced hundreds of thousands of pages of documents over the following months in response to plaintiffs' first request.

24. On October 16, 2006, the Court referred this litigation to Magistrate Judge Mary Pat Thynge for mediation. (D.I. 83) With Judge Thynge's approval, the parties retained Jonathan D. Marks, a nationally recognized mediator experienced in securities litigation to assist in the process and conduct the formal mediation sessions. Judge Thynge ordered the parties to provide regular updates as to the status of the mediation. (D.I. 94)

25. The parties initially set the mediation for December 12-13, 2006. In anticipation of this mediation, Lead Counsel submitted a written mediation brief to Mr. Marks on November 27, 2006. Following receipt and review of Defendants' mediation statement, Lead Counsel also submitted a responsive brief on December 5, 2006.

26. During the foregoing process, Lead Counsel continued reviewing the hundreds of thousands of pages being produced by Defendants. However, prior to the mediation date, Lead Counsel and Mr. Marks concluded that the documents produced to date were not adequate to allow the mediation to be productive. Accordingly, the parties agreed, with the assistance of Mr. Marks, that the mediation would be postponed and that Defendants would produce additional documents.

27. Lead Plaintiffs served their second request for the production of documents on or about December 12, 2006, and engaged in regular informal

communications with Defendants' counsel and with Mr. Marks thereafter to ensure that Defendants' production was adequate to allow the mediation to proceed.

28.   Lead Plaintiffs and Defendants repeatedly disagreed over the proper scope of documents to be produced by Defendants. Lead Plaintiffs worked at length with Jonathan Marks and directly with Defendants' counsel, over the course of dozens of conference calls and hundreds of emails, letters, and faxes, to obtain additional documents from Defendants.

29.   Based on Lead Counsel's efforts, Defendants continued to produce documents into July 2007. In total, Defendants produced (and Lead Counsel analyzed) over 1.2 million pages of documents.

30.   In addition, Lead Plaintiffs on May 21, 2007, issued a third-party document subpoena to KPMG LLP, Veritas' auditor during the relevant period. (D.I. 98) In response, KPMG produced (and Lead Counsel reviewed) over 15,000 pages of documents.

31.   Lead Plaintiffs also, on June 29, 2007, issued a third-party document subpoena to FBR Capital Management, Inc., the publisher of an equity research report that reported that Defendants made a statement (at an FBR-hosted conference) that Lead Plaintiffs alleged in the Complaint was false and misleading. However, FBR did not have any responsive documents in its possession, custody or control.

**The Evolving Investigation Regarding Lead Plaintiffs' Accounting Claims**

32.   Lead Counsel's review and analysis of the documents produced by Defendants during the above process uncovered only limited evidence directly supporting Lead Plaintiffs' allegations as to one specific method by which the Complaint had

7

alleged that Defendants had misstated Veritas' financial results (specifically, that Veritas had prematurely recognized revenue on certain contracts that had not been completed).

33. However, Lead Counsel's review uncovered evidence of other possible misrepresentations and misstatements in Veritas' reported financial results during the Class Period in violation of GAAP. For example, the documents produced by Defendants raised concerns that Veritas had intentionally stopped billing for professional services in order to defer the revenue improperly; accrued expenses in order to provide an improper "cushion" that could be used improperly to buttress income at a later date; and improperly allocated revenue between its service and license classifications.

34. Accordingly, during the discovery process, Lead Plaintiffs (in addition to continuing to pursue the Forecast Claims) broadened the focus of their Accounting Claims (and their discussions with Defendants) to explore these issues.

### The First Mediation and its Aftermath

35. As the discovery process continued, the parties reset their mediation before Mr. Marks for August 2-3, 2007. On July 19, 2007, Lead Counsel submitted a 43-page mediation statement to Mr. Marks detailing their claims (as refined through the discovery process).

36. Despite meeting over the course of two days, the August 2-3 mediation was unsuccessful.

37. On August 10, 2007, Defendants served their second set of interrogatories on Lead Plaintiffs. (D.I. 99) Lead Plaintiffs served their responses and objections on September 10, 2006. (D.I. 106)

38. On August 29, 2007, Lead Plaintiffs and Defendants, in light of the limited evidence that had been developed to date against Defendant John Brigden, filed a joint stipulation to voluntarily dismiss Lead Plaintiffs' claims against Brigden without prejudice. (D.I. 102-03)

39. On September 19, 2007, Defendants filed a motion for summary judgment asserting that Lead Plaintiffs' Accounting Claims as alleged in the Complaint should be dismissed, because, among other things, the contested nature of certain information from a confidential informant contained in the Complaint.

40. During the pendency of Defendants' motion for summary judgment (and before Lead Plaintiffs filed their opposition brief), the parties conferred further and, after extensive and substantial discussions concerning the range of a potential settlement and the scope of necessary further discovery, agreed to renew mediation efforts.

### The Second Mediation and Post-Mediation Discovery

41. The parties conducted their second mediation session with Mr. Marks on November 12, 2007.

42. At the conclusion of the mediation session, the parties signed a Memorandum of Understanding under which the Class would accept $21.5 million in settlement of the Litigation. However, the settlement was expressly conditioned upon several prerequisites. First, Defendants were obliged to turn over certain internal Veritas accounting policies that had yet to be produced. Second, Defendants were obliged to produce transcripts of the testimony that Individual Defendants Bloom and Gillis had given before the SEC pursuant to a separate SEC investigation. Third, Lead Plaintiffs were entitled to obtain up to ten (10) additional transcripts of testimony given to the SEC

by other individuals of Lead Plaintiffs' choosing. Fourth, Lead Plaintiffs were entitled to conduct eight (8) interviews of other witnesses of Lead Plaintiffs' choosing.

43. Pursuant to the terms of the Memorandum of Understanding, Lead Counsel obtained from Defendants the accounting policies to which they were entitled.

44. In addition, Lead Counsel obtained and reviewed the SEC transcripts of Defendants Bloom and Gillis and of John Brigden (senior vice president and general counsel); Michael Cully (Controller); Dan Dufour (accounting director); Clive Fiedor (director of internal audit); Jay Jones (senior vice president and general counsel); Rita Lucas (director of revenue); Doug Newton (assistant Controller); Thu Pham (revenue manager); and portions of the transcript of Ken Lonchar (former CFO).

45. Finally, Lead Counsel conducted in depth interviews of Defendants Bloom and Gillis and of Michael Coney (vice president, U.S. sales); Clive Fiedor (director of internal audit); Tim Harvey (director of financial planning); Rita Lucas (director of revenue); Art Matin (executive vice president, worldwide sales); Bill Robbins (senior vice president, Americas); and an additional short interview with Joe Julian (senior vice president of sales, Americas).

46. After completing the post-mediation discovery to which they were entitled and after consulting extensively with Lead Plaintiffs' outside accounting and damages experts, Lead Plaintiffs agreed to proceed with the settlement negotiated at the November 12, 2007 mediation.

**The Stipulation of Settlement, Preliminary Approval, and Notice to the Class**

47. Lead Counsel thereafter negotiated the terms and details of the Stipulation of Settlement and related papers (including the notice to class members) with Defendants.

48. As part of this process, Lead Counsel worked extensively with an economic expert to devise a plan of allocation that fairly reflected the relative strength of the class' claims and the damage suffered by each type of security.

49. The parties signed the Stipulation of Settlement on April 8, 2008, and submitted to the Court on that same date. (D.I. 122)

50. On April 16, 2008, the Court preliminary approved the settlement of the Litigation, and directed that notice be provided to the Class. (D.I. 124)

51. As set forth in more detail in the Affidavit of Michael Rosenbaum, filed on July 22, 2008, Berdon Claims Administration LLC (the claims administrator selected by Lead Plaintiffs and approved by the Court) has sent 220,987 notices of the settlement to members and potential members of the Class and has caused the Summary Notice to be published in the national edition of *Investor's Business Daily* and posted to PR Newswire on May 14, 2008.

52. As further detailed in the Affidavit of Mailing, only 4 Class members (comprising less than 10,000 shares of Veritas stock) have opted out of the settlement, and no Class Member has objected to the settlement.

### The Plan of Allocation

53. The proposed Plan of Allocation as contained in the Notice sets forth the manner in which the Settlement Fund, less the costs of Notice, administrative costs and fees, and any award of attorneys' fees shall be distributed to the authorized claimants. Co-Lead counsel prepared the Plan after careful consideration and with the assistance of their damages expert.

54.     The proposed formula is derived from analysis by plaintiffs' damages expert of the market-adjusted declines in the price of Veritas stock upon disclosure of the accounting restatement on March 15, 2004 ($0.56 per share) and disclosure of the actual terms of the restatement on June 14, 2004 ($0.11 per share), as well as the market-adjusted decline in the price of Veritas stock upon disclosure following trading on July 2, 2004 of the failure to meet revenue and earnings guidance provided by Veritas ($8.50 per share); the adjusted price drop of $8.50 per share following July 2, 2004 was reduced by 50% based upon Lead Counsel's analysis of the likelihood of success of proving the claims related to the earnings guidance. The complete Recognized Claim formula is set forth in detail in the Notice. No class member has objected to the proposed Plan.

55.     The Plan does not constitute a formalized damage analysis but is a simplified methodology used to compare one Class member to another through their respective transactions in Veritas securities during the Class Period. Lead Counsel believes that this method of allocation is fair, reasonable, and adequate and should be approved.

### Attorneys' Fees and Lead Plaintiff Awards

56.     This declaration is also submitted in support of the request for an award of attorneys' fees of 30% of the Settlement Fund and reimbursement of expenses in the amount of $403,395.07 plus interest on both amounts. This request is consistent with established precedent in the Third Circuit. In addition, a cross-check of the lodestar also supports the requested award. Plaintiffs' counsel have spent more than 8,212 hours for a lodestar of $4,223,458.50. Affidavits from each of the plaintiff firms who performed

work on this litigation have been filed contemporaneously herewith and are summarized in a chart annexed hereto as Exhibit A.

57. In connection with the prosecution of this complex litigation, plaintiffs' counsel have conducted factual and legal investigations of Plaintiffs' claims; prepared initial and amended complaints; prepared briefs in opposition to defendants' motion to transfer venue and for reconsideration; prepared briefs in opposition to defendants' motion to dismiss; responded to Defendants' class certification discovery and obtained class certification; analyzed Defendants' motion for summary judgment; conducted and reviewed extensive discovery as detailed above; and negotiated and prepared settlement approval and notice documents. In addition, throughout the pendency of this litigation, plaintiffs' counsel have consulted with accounting and damages experts; and responded to shareholder inquiries. Every effort was made to avoid duplication. This was not a difficult task here as all substantive work was handled by the three co-lead counsel.

58. As set forth above, Lead Counsel also seek reimbursement for their out-of-pocket expenses in the amount of $403,395.07 plus interest earned at the same rate as the Settlement Fund. These expenses include costs incurred in retaining experts in the areas of accounting and damages as well as the mediator all of which were crucial to achieving the settlement here. The remaining expenses include copy charges, on-line research, over night delivery, postage, travel and other expenses directly to the prosecution of the litigation. Each of the Lead Counsel made substantial contributions to a Litigation Fund which fund, in part, paid for the expert, mediation and outside copying charges. No objection to such reimbursement has been received.

59. Lead Plaintiffs also seek an award pursuant to 15 U.S.C. §78u-4(A)(4) in the amount of $15,000 each. As set forth in their accompanying declarations, these plaintiffs played an active and substantive role in this litigation.

## CONCLUSION

60. Based on the foregoing, the undersigned respectfully request that the Court approve the settlement as fair, reasonable and adequate, and approve the requested fee and expense applications for counsel and the Lead Plaintiffs.

Dated: July 22, 2008

/s/ Robert I. Harwood
Robert I. Harwood

## SUMMARY OF TIME AND EXPENSES

| FIRM NAME | TOTAL HOURS | LODESTAR | EXPENSES |
|---|---|---|---|
| Harwood Feffer LLP | 3,160.4 | $1,585,309.50 | $182,133.65 |
| Izard Nobel LLP | 3,045.5 | $1,618,950.00 | $122,763.15 |
| Labaton Sucharow LLP | 1,766.9 | $ 883,181.50 | $ 93,915.80 |
| Rosenthal, Monhait & Goddess, P.A. | 71.2 | $ 31,387.50 | $ 2,504.85 |
| Brower Piven, A Professional Corporation | 168.0 | $ 104,630.00 | $ 2,077.62 |
| **TOTALS** | **8,212.0** | **$4,223,458.50** | **$403,395.07** |

**EXHIBIT A**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of July, 2008, a copy of the foregoing **Declaration Of Robert I. Harwood In Support Of Lead Plaintiffs' Motion For Final Approval Of The Proposed Settlement, Lead Counsel's Application For An Award For Attorneys' Fees And Reimbursement Of Expenses, And Lead Plaintiffs' Application For An Award To Lead Plaintiffs Pursuant To 15 U.S.C. § 78U-4(a)(4)** was served electronically by CM/ECF upon the following:

>Peter J. Walsh, Jr., Esquire
>Potter Anderson & Corroon LLP
>The Hercules Plaza, 6th Floor
>1313 N. Market Street
>Wilmington, Delaware 19801

*/s/ Norman M. Monhait*
Norman M. Monhait (#1040)