IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE VERITAS SOFTWARE CORP.<br>SECURITIES LITIGATION | : | Case No: 04-CV-831 (SLR)<br>Consolidated Action |
| | : | |
| This Document Relates to: | : | |
| ALL ACTIONS | : | |

**AFFIDAVIT OF NORMAN M. MONHAIT ON BEHALF OF
ROSENTHAL MONHAIT & GODDESS, P.A. IN SUPPORT OF
JOINT PETITION FOR ATTORNEYS' FEES AND DISBURSEMENTS**

STATE OF DELAWARE   )
                    ) ss:
COUNTY OF NEW CASTLE)

Norman M. Monhait, being duly sworn, deposes and says:

1.  I am a member of the firm of Rosenthal Monhait & Goddess, P.A., liaison counsel for plaintiffs in this securities class action brought against Veritas Software Corp. ("Veritas") and certain of its directors and officers. I submit this affidavit in support of plaintiffs' application for an award of attorneys' fees and reimbursement of expenses incurred during this litigation.

2.  The schedule attached hereto as Exhibit A is a summary of the amount of time spent by the professionals of this firm on the litigation, at current rates. These hourly rates are the rates currently charged in complex corporate litigation matters. The schedule includes the name of each attorney who worked on the case, his or her hourly billing rate, and the numbers of

7. The expenses incurred in the prosecution of this case are reflected on the books and records of this firm, including internal expense documentation and vendor invoices.

*[signature]*
NORMAN M. MONHAIT (#1040)

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 24TH day of
July, 2008

*[signature]* Carol M. Snyder
Notary Public

3

hours expended on this matter. The schedule was prepared from contemporaneous daily time records maintained by my firm.

3. As liaison counsel, my firm was involved in the following tasks, among others:

   a. review, revision and filing of initial, amended and second amended complaints;

   b. review, revision and filing of briefs in opposition to defendants' motions to transfer venue and for reconsideration of the same;

   c. review, revision and filing of motions for consolidation and appointment of lead plaintiff;

   d. review, revision and filing of brief in opposition to defendants' motion to dismiss;

   e. participating in conferences with the Court;

   f. review of defendants' motion for summary judgment;

   g. review, revision and filing of discovery requests and responses, subpoenas, etc.; and

   h. review, revision and filing of Stipulation of Settlement, Notice of Pendency, Summary Notice, plan of allocation and related documents, including supporting memoranda.

4. With respect to the qualifications of counsel in this action, attached hereto as Exhibit B is a brief biography of my firm and the firm's attorneys who worked on this litigation.

5. As shown by Exhibit A, the total number of hours spent on this litigation by my firm was 71.20 hours. The total lodestar amount for my firm is $31,387.50. This does not include time spent in connection with this fee application.

6. As detailed in Exhibit C, my firm has incurred a total of $2,504.85 in unreimbursed expenses in connection with the prosecution of this action.

*In Re Veritas Software Corp. Securities Litigation*

## ROSENTHAL MONHAIT & GODDESS, P.A.

### Time Report

| Attorney Name | Total Hours | Rate | Lodestar |
|---|---|---|---|
| Norman M. Monhait | 66.10 | $450 | $29,475.00 |
| Carmella P. Keener | 5.10 | $375 | 1,912.50 |
| **TOTAL:** | 71.20 | | $31,387.50 |

**EXHIBIT A**

# EXHIBIT B

# RESUME OF
# ROSENTHAL, MONHAIT & GODDESS, P.A.

Rosenthal, Monhait & Goddess, P.A. devotes a substantial portion of its practice to commercial and corporate litigation, particularly the representation of stockholders in derivative and class actions, primarily in Delaware courts. Illustrative of the cases in which the firm has participated are the following:

(1) *In the Matter of the Philadelphia Stock Exchange, Inc.*, 945 A.2d 1123 (Del. 2008). The firm was Delaware counsel to minority shareholders of a securities exchange who challenged investment transactions as unfairly dilutive of their interests. Shortly before trial, the parties agreed on a settlement valued at more than $90 million. The Court of Chancery approved the settlement, and the Delaware Supreme Court affirmed.

(2) *In re UnitedGlobalcom Inc. Shareholders Litigation*, Del. Ch., C.A. No. 1012-VCS (2008). The firm participated in the representation of former shareholders of United Globalcom Inc. who challenged the fairness of consideration they received in a merger orchestrated by UGC's controlling shareholder. After extensive litigation, the parties agreed to a settlement, approved by the Court of Chancery, which produced a $25 million cash fund for distribution to the former shareholders.

(3) *Wilmington Trust Company v. Tropicana Entertainment, LLC, et al.*, Del. Ch., C.A. No. 3502-VCN (2008). The firm served as Delaware counsel to Wilmington Trust Company, as Indenture Trustee for Tropicana Entertainment, LLC and Tropicana Finance Corp. 9 5/8% Senior Subordinated Notes, and derivatively on behalf of Tropicana Entertainment, LLC. After briefing on motions for partial summary judgment, the Court awarded partial summary judgment in favor of the Indenture Trustee as to certain issues regarding an event of default under the Indenture.

(4) *In Re Telecommunications, Inc. Shareholders Litigation*, Del. Ch., Consol., C.A. No. 16470-NC (2007). The firm was Delaware counsel in an action challenging the payment of a 10% premium to the holders of high-vote shares of Telecommunications, Inc. ("TCI") in connection with the March 9, 1999 merger of TCI with AT&T Corp. Subsequent to the denial of defendants' motions for summary judgment, completion of merits and expert discovery and almost all pre-trial preparation, the parties reached an agreement to settle the action for an all cash payment of $52 million, which, after the payment of attorneys' fees and expenses, was distributed to the holders of TCI's A shares unaffiliated with defendants.

(5) *Miron v. Microsoft Corporation*, Del. Ch., C.A. No. 1149-CC. The firm substituted for initial counsel in the prosecution of claims brought on behalf of former senior executives and employees of a software company concerning treatment of their stock options after a change in company ownership and management. After reconceiving the theory of the case and filing a brief in opposition to defendants' summary judgment motion, the firm and plaintiffs participated in a mediation which produced a confidential settlement.

(6) *Craig Davis v. Parris H. Holmes, Jr., et al. and New Century Equity Holding, Corp.*, Del. Ch., C.A. No. 638-N (2006). The firm was Delaware counsel to shareholders who brought an action alleging derivative claims of mismanagement and waste, and seeking the appointment of a custodian. After substantial litigation and mediation, the parties reached (and the Court approved) a settlement resulting in the creation of a settlement fund of $3,200,000, which, after payment of plaintiffs' counsel's fees and expenses, was distributed to the company's common stockholders as a dividend. The settlement also provided the company and its stockholders with additional benefits, including the elimination of certain monetary obligations of the company.

(7)     *Bakerman v. Sidney Frank Importing Co. Inc.*, 2006 WL 2987020 (Del. Ch.). The firm served as Delaware counsel to a former senior executive who asserted claims of breach of contract and breach of fiduciary duty. After the Court of Chancery denied defendants' motion to dismiss, the parties negotiated a confidential settlement.

(8)     *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121 (Del. Ch. 2004). The firm served as Delaware counsel to a member of a limited liability company which brought breach of contract, breach of fiduciary duty, and fraud claims against the LLC, other LLC members and managers. After the Court of Chancery denied defendants' motion to dismiss, the parties reached a confidential settlement.

(9)     *Raider v. Sunderland*. Del. Ch., C.A. No. 19357 (2005). The firm was co-counsel for the plaintiff in a class action claiming that a controlling shareholder caused a corporation to pay excessive consideration to acquire another company owned by the controlling shareholder. The Court of Chancery approved a settlement which created a $15 million settlement fund for the benefit of minority shareholders.

(10)    *In re The Walt Disney Company Derivative Litigation*, 2005 WL 2056650 (Del. Ch.); 906 A.2d 27 (Del. 2006); 907 A.2d 693 (Del. Ch. 2005); 805 A.2d 275 (Del. Ch. 2003); 746 A.2d 244 (Del. 2000), and 731 A.2d 342 (Del. Ch. 1998). The firm served as Delaware counsel to the plaintiffs in this derivative litigation challenging the employment agreement of and termination payments to a former senior executive, and participated actively in the three-month trial which resulted in a decision for defendants.

(11)    *In re NCS Healthcare Inc. Shareholders Litigation*, Del. Ch., Cons. C.A. No. 19786 (2003). The firm served as Delaware counsel to shareholders of NCS Healthcare Inc. who asserted that the board of directors of NCS, which had entered into an agreement to be acquired by

Genesis Health Ventures Inc., failed to respond appropriately to a competing bid from Omnicare Inc. After the Court of Chancery denied a preliminary injunction, the Delaware Supreme Court reversed and directed the Court of Chancery to enter an order preliminarily enjoining consummation of the Genesis merger agreement. A bidding contest resulted in which Omnicare eventually acquired NCS for consideration valued, in the aggregate, at more than $100 million more than the proposed Genesis merger.

(12) *In re InaCom Corp. Securities Litigation*, D. Del., C.A. No. 00-701 (JJF) (2003). The firm served as liaison counsel in a class action asserting federal securities law claims on behalf of open market purchasers of the defendant corporation's stock. The action was settled with a recovery of approximately $15.9 million for the benefit of class members.

(13) *In re M&F Worldwide Corp. Shareholders Litigation*, Del. Ch., Cons. C.A. No. 18502 (2002). The firm served as Delaware counsel to shareholders who challenged a corporate asset acquisition. During trial, defendants agreed to a settlement which required rescission of the transaction. The Court of Chancery placed the value of that benefit at more than $75 million.

(14) *In re Seagate Technology, Inc. Shareholders Litigation*, Del. Ch., C.A. No. 17932 (2001). The firm participated in the representation of shareholders who challenged a combined asset sale/merger transaction. A settlement approved by the Court of Chancery provided monetary benefits worth more than $112 million to the shareholder class.

(15) *Sam Gower and Claude DeLibes v. Donald T. Beldock, et al.*, Del. Ch., C.A. No. 14387-NC (2001). The firm was Delaware counsel in a litigation challenging a going-private transaction in which the minority stockholders were paid nominal consideration. Subsequent to a trial on the merits, the parties reached a settlement providing gross additional consideration to the

shareholders (before attorneys' fees and expenses) that was approximately 6.7 times more than the original consideration.

(16)    *Sanders v. Wang*, 1999 WL 1044880 (Del. Ch.). The firm participated in the representation of stockholders who, in a derivative action, obtained a judgment on the pleadings requiring corporate officers to return 9.5 million shares of improperly issued stock, worth more than $450 million. While an appeal was being briefed, the parties agreed to a settlement which required defendants to return 4.5 million shares to the company.

(17)    *In re Ascent Entertainment Group, Inc. Shareholders Litigation*, Del. Ch., C.A. No. 17201. The firm participated in the representation of shareholders who challenged an asset sale; a settlement provided for a new sale process which produced more than $40 million in additional value.

(18)    *In re Amdahl Corporation Shareholders Litigation*, Del. Ch., C.A. No. 15833 (1997). The firm served as Delaware liaison counsel in a class action challenging a majority shareholder's acquisition of the minority interest in Amdahl Corporation. The action was settled with a recovery of more than $28 million for shareholders.

(19)    *In re Lin Broadcasting Corporation Shareholders Litigation*, Del. Ch., C.A. No. 14039 (1995). The firm participated in the representation of shareholders who challenged an acquisition transaction. As a result of a settlement of the litigation, Lin's public shareholders received additional consideration worth more than $55 million in the transaction as implemented.

(20)    *Paramount Communications, Inc. v. QVC Network, Inc.*, 637 A.2d 34 (Del. 1993). The firm participated in the representation of stockholders who obtained a preliminary injunction against a tender offer for stock of Paramount Communications, Inc.

(21) *Heineman v. Datapoint Corporation*, 611 A.2d 950 (Del. 1992). The firm was one of two principal counsel for a stockholder who prosecuted derivative claims for self-dealing and waste against corporate directors, and secured a settlement valued in excess of $3 million.

(22) *In re Brooke Group Ltd. Litigation*, Del. Ch., Cons. C.A. No. 11838. The firm served as co-lead counsel in a class action suit brought on behalf of stockholders of Brooke Group Ltd. concerning a corporate reorganization. In a settlement approved by the Delaware Court of Chancery in 1992, the case resulted in improvements valued in excess of $5 million to the terms of a complex security issued in the transaction.

(23) *Mills Acquisition Co. v. MacMillan, Inc.*, 559 A.2d 1261 (Del. 1988); *Robert M. Bass Group, Inc. v. Evans*, 552 A.2d 1227 (Del. Ch. 1988). The firm participated in the representation of shareholders opposed to a corporate restructuring intended to thwart a proposal for acquisition of the company.

(24) *Joseph v. Shell Oil Company*, Del. Ch., C.A. No. 7450. The firm participated in the litigation of a class action suit brought on behalf of stockholders of Shell Oil Company concerning a cash-out merger proposal. After plaintiffs secured a preliminary injunction (482 A.2d 335 (Del. Ch. 1984)) and prepared the case for trial, a recovery of $150,000,000 was obtained in a settlement approved by the Court of Chancery in 1985.

The firm attorneys who participated in this matter were Norman M. Monhait and Carmella P. Keener.

## **NORMAN M. MONHAIT**

Mr. Monhait is a graduate of Lehigh University (B.A. with highest honors, 1970) and of the Harvard Law School (J.D. cum laude, 1975). In law school, he served as comments editor of the *Harvard Civil Rights - Civil Liberties Law Review* and authored "Federal Declaratory Relief from Unconstitutional State Statutes: The Implications of Steffel v. Thompson," 9 Harv. Civ.R. - Civ.L.L.Rev. 520 (1974). After graduation he served as law clerk to the Honorable Max Rosenn, United States Court of Appeals for the Third Circuit. From November 1976 until October 1979, Mr. Monhait was an Assistant United States Attorney for the District of Columbia, engaged in the prosecution of criminal trials and civil and criminal appeals. In October 1979, Mr. Monhait associated with the firm's predecessor; he became a member of the predecessor firm on January 1, 1987. His practice has focused on corporate and commercial litigation in the Court of Chancery. Mr. Monhait was a member of the Delaware State Bar Association's ("DSBA") Continuing Legal Education Committee from 1980 through 1987 and served as Chairman in 1984-1985. By appointment of the Delaware Supreme Court, Mr. Monhait served as Chairman of the Delaware Commission on Continuing Legal Education from its inception in January 1987 until January 1993; the Commission administers the Delaware Supreme Court's required program of mandatory continuing legal education. In 1997, the Delaware Supreme Court appointed Mr. Monhait chairman of a committee the Court constituted to review the program of mandatory continuing legal education. Mr. Monhait is currently a member of the Court of Chancery Rules Committee and the Council of the DSBA's Section on Corporation Law, which reviews and proposes revisions to the Delaware General Corporation Law. Mr. Monhait has also served as a guardian *ad litem* for children in dependency and neglect proceedings in Delaware Family Court. Mr. Monhait was a member of the

7

Boards of Directors of the Wilmington Jewish Community Center and the Delaware Council on Crime and Justice (currently the Delaware Justice Center) and served for eighteen years as a member of the Board of Trustees of Wilmington Friends School. He is a member of the Boards of Directors of the American Civil Liberties Union of Delaware and The Kutz Home, Inc., a residential skilled nursing facility for the elderly.

### CARMELLA P. KEENER

Ms. Keener is a graduate of Lafayette College (1985) and of Rutgers University School of Law (J.D., Tax Law Honors, 1988). In law school she won the American Jurisprudence Awards for Commercial Paper and Property Law. After graduation she served as a law clerk to The Honorable Joshua W. Martin, Delaware Superior Court, managing complex insurance coverage litigations for the Court. Subsequent to her tenure as a judicial law clerk, she represented the Johns Mansville Asbestos Disease Trust Fund in asbestos litigation, until she joined the firm in December 1991. She became a member of the firm on September 1, 1999. Her practice has focused on corporate litigation in the Court of Chancery and insurance coverage litigation in the Delaware Superior Court, as well as class actions in the District of Delaware.

Ms. Keener served on the e-Filing Subcommittee to the Court of Chancery Rules Committee, has served as a New Castle County Co-Chairperson for the Delaware State Bar Association's Combined Campaign for Justice, and is recently appointed to the Executive Committee of the Delaware State Bar Association. Ms. Keener is actively involved with Special Olympics Delaware, and serves on the Organizing Committee for the state Summer Games.

g:\mst\RMGResume7-23-08

*In Re Veritas Software Corp.*
*Securities Litigation*

## ROSENTHAL MONHAIT & GODDESS, P.A.

### Expense Report

| **Expense** | **Amount** |
|---|---|
| Courier Service | $ 207.50 |
| Court Costs | $ 404.00 |
| Facsimile | $ 77.00 |
| Federal Express | $ 34.83 |
| Legal Research | $ 201.89 |
| Pacer/Retrieval | $ 8.48 |
| Photocopies | $1,404.70 |
| Postage | $ 119.01 |
| Telephone | $ 47.44 |
| **TOTAL:** | $2,504.85 |

**EXHIBIT C**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of July, 2008, a copy of the foregoing **Affidavit Of Norman M. Monhait On Behalf Of Rosenthal Monhait & Goddess, P.A. In Support Of Joint Petition For Attorneys' Fees And Disbursements** was served electronically by CM/ECF upon the following:

> Peter J. Walsh, Jr., Esquire
> Potter Anderson & Corroon LLP
> The Hercules Plaza, 6th Floor
> 1313 N. Market Street
> Wilmington, Delaware 19801

_____
Norman M. Monhait (#1040)