**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re VERITAS SOFTWARE CORP.** | ) | Case No. 04-CV-831 (SLR) |
| **SECURITIES LITIGATION** | ) | Consolidated Action |

**OBJECTION TO MOTION**
**FOR ATTORNEY'S FEES**

Pursuant to Fed. R. Civ. P. 23(h), class members Peter A. Spitalieri, Trustee u/t/d 6/10/88, and 771 Freedom Street LP, both of 1140 Terex Road, Hudson, OH 44236, hereby submit this objection to Lead Plaintiffs' Application For An Award Of Attorneys' Fees And Expenses ("Fee Application") that was filed on July 24, 2008. Peter A. Spitalieri purchased 710 shares of Veritas stock on January 23, 2004, and held all 710 shares as of the close of trading on July 2, 2004. 771 Freedom Street LP purchased 465 shares of Veritas stock on January 23, 2004, and held all 465 shares as of the close of trading on July 2, 2004.[1]

### I. Class Counsel Failed to Direct Notice of Its Fee Motion to Class Members in a Reasonable Manner.

The Notice of Pendency And Proposed Settlement of Class Litigation ("Notice") fails to provide the information required by Fed. R. Civ. P. 23(h). Fed. R. Civ. P. 23(h) provides:

(1) *Motion for Award of Attorney Fees.* A claim for an award of attorney fees and nontaxable costs must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision, at a time set by the court. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) *Objections to Motion.* A class member, or a party from whom payment is sought, may object to the motion.

---

[1] Pursuant to Local Rule 7.1.2 (b), this response has been filed within 10 days of the filing of Class Counsel's Fee Application. While the Fee Application was never properly served on class members pursuant to Rule 23(h)(1), counsel for objectors downloaded it from PACER on July 24, 2008.

1

The right granted by this rule is the right to object to *"the motion,"* not to the amount of fees requested by the motion. Therefore, logically, objections to the motion cannot be due prior to the time the motion is filed.

The Notice requires that any objections to the settlement *or to class counsel's attorney's fees* must be filed by June 30, 2008, long before Class Counsel filed its Fee Application. Pursuant to Rule 23(h)(2) and Local Rule 7.1.2(b), each class member, including the two undersigned objectors, has the right to object to Class Counsel's fee motion within ten days of its filing. The Notice does not provide any information to class members about when the fee motion would be filed or how they could obtain a copy of it. The Notice states only that Class Counsel intends to request fees "not to exceed 30%" of the Settlement Fund. It does not state when, where or how Class Counsel would be making its request, or inform class members how they can obtain knowledge of the request. It does not provide the basis for the requested fee award, such as Class Counsel's reasonable lodestar, or the fee negotiated by Lead Plaintiffs at the commencement of this case, *i.e.*, the relevant information that would permit class members to make an informed consideration of the fee request.

Merely filing the Fee Application with the Court, without notice to the class of when the motion is filed or how it can be accessed, is not "direct[ing notice] to class members in a reasonable manner." FRCP 23(h)(1).

The method followed in this case results in the procedural anomaly of requiring objections to the fee motion to be filed before the motion itself has been filed. This could not have been the intent of the Court, and objectors presume that the Court approved that portion of the Order Preliminarily Approving Settlement And Providing For Notice, which was clearly drafted by the Parties and presented to the Court for signature, by mistake and without focusing on the absurd and illogical result that flows from it.

## II. 30% Of The Settlement Fund Is An Excessive Attorney's Fee.

A 30% fee request in the context of a routine securities fraud case in which the Defendant issued a restatement and the SEC conducted an investigation is astonishing and completely out of scale to fee awards in similar cases, at least since the era of fee moderation was ushered in by the PSLRA and cases like *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001). The reason for such a large fee request is perhaps explained by the relative weakness and inadequacy of the two Lead Plaintiffs, both of whom are individuals who presumably lack the sophistication or motivation to adequately monitor Lead Counsel.

This Circuit has held that the PSLRA "is designed to infuse lead plaintiffs with the responsibility (and motivation) to drive a hard bargain with prospective lead counsel and to give deference to their stewardship." *In re Cendant Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001). "[C]ourts should afford a presumption of reasonableness to fee requests submitted pursuant to an agreement between a properly-selected lead plaintiff and properly-selected lead counsel." *Id.*

Instead of fulfilling their duties pursuant to the PSLRA, the two lead plaintiffs here, Tay Siew Choon and Mark Leonov, have acted more like pre-Reform Act lead plaintiffs who were manipulated by class counsel and could not effectively monitor the lawyers on behalf of the absent class members.

> Lead plaintiffs were often unsophisticated investors who held small claims, and, according to some reports, they were sometimes paid "bounties" by lead counsel in exchange for their "services." In such situations, it was unlikely that the lead plaintiff had undertaken a meaningful counsel selection process; indeed, it was suspected that lead counsel generally selected the lead plaintiff rather than vice versa. Moreover, there was generally little reason to believe that the lead plaintiff had the incentive or inclination to engage in aggressive bargaining over lead counsel's fee, or that a typical lead plaintiff could be counted on to engage in meaningful monitoring of lead counsel's performance.

*Id.* at 255. One indication of the Lead Plaintiffs' relative weakness *vis a vis* their counsel is the fact that they elected to retain three "Co-Lead Counsel" firms, rather than selecting the least expensive or more efficiently staffed of the three, something that would have saved the class a great deal of money.

The inherent inefficiency of a Co-Lead Counsel arrangement was noted by the Third Circuit in *In re: Cendant Corp. Sec. Litig.*, 404 F.3d 173 (3d Cir. 2005).

> In particular, the filing of multiple complaints each alleging the same facts and legal theories will not result in fee awards for each firm that files a complaint: such copycat complaints do not benefit the class, and are merely entrepreneurial efforts taken by firms attempting to secure lead counsel status.
> [W]e conclude that representation of individual class members – and, in particular, monitoring of the progress of the litigation on behalf of those members – is not compensable out of the class' common recovery. All of the appellant firms here claim that they monitored the class action, but

4

> none can show that this monitoring independently increased the recovery of the class.

*Id.* at 181. Having a multitude of firms performing duplicative and redundant work simply runs up the bill at the expense of the class, leading to a lower net recovery for class members. The Lead Plaintiffs here should have taken advantage of the fact that there were three firms vying for the position of lead counsel by holding an auction or otherwise soliciting the lowest percentage fee bid. It is inconceivable that, had the Lead Plaintiffs thus fulfilled their duty to the class, the winning bid would have been 30%.

Not only is there no presumption of reasonableness attached to the fee request submitted by Co-Lead Counsel, there is an inherent presumption of unreasonableness as a result of the Lead Plaintiffs' complete failure to attempt to obtain the lowest price for the legal services necessary to pursuing this litigation.

The Second Circuit recently announced the general principle, albeit in a different context, that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 493 F.3d 110, 112-118 (2d Cir. 2007). In *Arbor Hill* (a case on which retired Justice Sandra Day O'Connor sat by designation), the Second Circuit emphasized that this proposition – that a reasonable paying client wishes to pay the least amount necessary – is true whether the fees are paid

5

by the defendant pursuant to a fee-shifting statute, or by the plaintiff class pursuant to the common fund doctrine. Minimization of attorney's fees is the goal of every client who has not been promised a share of the attorney's fees.

This truism – that every reasonable, paying client wishes to pay the least amount of attorney's fees necessary – clearly did not obtain in this case, presumably because the two Lead Plaintiffs were too unsophisticated to understand their role under the PSLRA and how to effectively discharge it. Once they permitted the "Co-Lead Counsel" arrangement, they opened the door to redundant and duplicative billing that has had the effect of running up the lodestar and making the outrageous fee of 30% of the fund appear "reasonable" under a lodestar cross-check.[2] Co-Lead Counsel should not benefit from having clearly taken advantage of their clients at the counsel selection stage, and failing to inform their clients of their duty to select the least expensive counsel in order to minimize attorney's fees.

In light of the sorry record in this case, it may be questioned whether individual investors can ever be "adequate" lead plaintiffs in the post-Reform Act world. They hardly ever actively bargain over fees with the counsel who selected them to be their

---

[2] The requested multiplier of 1.52 appears less reasonable, however, when one divides $4.22 million by 8200 hours and comes up with an *average* hourly rate of $514/hour. That is perhaps a reasonable rate for a partner, but the average rate presumably represents billing by numerous associates, paralegals, contract attorneys and support staff, who should be billed out at rates of $150-$400/hour. If the average rate is $514, then either the partner rates are unreasonable, or junior attorneys and support staff were billed at exorbitant rates.

ticket into the litigation, and invariably they agree or acquiesce to far higher percentage fees than those obtained by institutional investors.[3]

Had Objectors Spitalieri and 771 Freedom Street negotiated a fee agreement with Lead Counsel at the outset of this case, the maximum percentage that they would have agreed to is 20%, because they would have expected a recovery in excess of $50 million, and would have expected that that could be achieved for less than $10 million in lodestar. If Lead Counsel had come to them after settling for $21.5 million and asked for a 50% fee increase, Objectors would have questioned why such a modest result warranted a fee increase, rather than a possible decrease.

The purpose of negotiating a fee *ex ante* at the beginning of a case is to protect both parties from unanticipated results. If Lead Counsel had recovered $100 million, for example, in damages, then their 20% fee agreement would have yielded fees of $20 million, commensurate with an outstanding result. If, as they did here, they recovered only $21.5 million, they should receive fees of only $4.3 million, essentially their lodestar. To permit otherwise would sever the interests of Lead Counsel from the interests of the Class, and permit Lead Counsel to receive a rich fee when the settlement they achieved is less than a reasonable lead plaintiff would have anticipated at the filing of this case. If Lead Counsel is permitted to recommend to its clients a settlement that is only a fraction of what the clients anticipated at the time they entered into the fee

---

[3] Indeed, Lead Counsel have offered no evidence that the Lead Plaintiffs ever approved or negotiated the requested fee of 30%, or that Lead Plaintiffs are even aware of the amount of the fee that has been requested.

7

agreement, but at the same time demand a fee percentage that is more than what was thought reasonable at the time the case was filed, thus preserving Lead Counsel's expected recovery at the expense of the class', the entire purpose of the Reform Act's requirement that fee agreements be negotiated *ex ante* is thwarted.

Co-Lead Counsel should receive no more than $4.3 million in fees, or 20% of the Settlement Fund, the amount that would have been a reasonable percentage fee at the inception of this case, and the one that an institutional investor would undoubtedly have negotiated.

Because (1) an adequate, sophisticated, institutional shareholder would have negotiated a contingent attorney's fee of no greater than 20% at the inception of this case, based upon projected damages, Veritas' restatement, and the SEC investigation, as well as average percentage fees negotiated in other PSLRA cases since 2001; and (2) the Court may not overrule a fee agreement negotiated by an adequate lead plaintiff and impose upon the class a fee that is greater than one the lead plaintiffs have agreed to, *see In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001), this Court should defer to the hypothetical fee agreement that an adequate lead plaintiff would have negotiated at the beginning of this litigation, and award a fee of no more than 20%. To do otherwise would penalize the class for Lead Plaintiffs' inadequacy.

## CONCLUSION

For the foregoing reasons, this Court should require supplemental notice to the Class before ruling on Class Counsel's Fee Application, give Class Members a

reasonable opportunity to respond to Class Counsel's Fee Application pursuant to Rule 23(h)(2), and award Class Counsel a reasonable attorney's fee of no more than 20% of the settlement fund

Respectfully submitted,
Peter A. Spitalieri and 771 Freedom Street LP,
By their attorneys,

/s/: Jeffrey S. Friedman and Brian E. Lutness
Jeffrey S. Friedman ( DE BAR ID: 3193)
Brian E. Lutness( DE BAR ID: 3572)
Silverman, McDonald & Friedman
1010 Bancroft Parkway, Suite 22
Wilmington, DE 19805
302-888-2900 - phone
302-888-2923 -fax

OF COUNSEL
Edward Cochran, Esquire
20030 Marchmont Road
Shaker Heights, OH 44122

John Pentz, Esquire
2 Clock Tower Place
Suite 260 G
Maynard, MA 01754

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re VERITAS SOFTWARE CORP.<br>SECURITIES LITIGATION | Case No. 04-CV-831 (SLR)<br>Consolidated Action |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the attached Objection to Motion for Attorney's Fees will be presented to the Court on July 31, 2008 at 4:00 pm or at the convenience of the Court.

Respectfully submitted,
Peter A. Spitalieri and 771 Freedom Street LP,
By their attorneys,

/s/: Jeffrey S. Friedman and Brian E. Lutness
Jeffrey S. Friedman ( DE BAR ID: 3193)
Brian E. Lutness( DE BAR ID: 3572)
Silverman, McDonald & Friedman
1010 Bancroft Parkway, Suite 22
Wilmington, DE 19805
302-888-2900 - phone
302-888-2923 -fax

OF COUNSEL
Edward Cochran, Esquire
20030 Marchmont Road
Shaker Heights, OH 44122

John Pentz, Esquire
2 Clock Tower Place
Suite 260 G
Maynard, MA 01754

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| **In re VERITAS SOFTWARE CORP.** | ) | Case No. 04-CV-831 (SLR) |
| **SECURITIES LITIGATION** | ) | Consolidated Action |

### ORDER

AND NOW, TO WIT, this _____ day of _____,

2008, having considered Defendants' Objection to the Motion for Attorney's Fees, and

the response thereto;

  IT IS HEREBY ORDERED that the objection is sustained.

_____

J.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re VERITAS SOFTWARE CORP.<br>SECURITIES LITIGATION | )<br>)<br>) | Case No. 04-CV-831 (SLR)<br>Consolidated Action |

### CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2008 I served the foregoing Opposition by first-class U.S. Mail and Electronic Filing upon the following counsel:

Jeffrey S. Nobel
SCHATZ NOBEL IZARD PC
20 Church Street
Hartford, CT 06103

Robert I. Harwood
HARWOOD FEFFER LLP
488 Madison Ave.
New York, NY 10022

Ira A. Schochet
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005

Peter Walsh
POTTER ANDERSON & COOPER LLP
1313 North Market Street
Wilmington, DE 19801

Nina F. Locker
WILSON SONSINI GOODRICH & ROSATI PC
650 Page Mill Road
Palo Alto, CA 94304-1050

Respectfully submitted,

10

Peter A. Spitalieri and 771 Freedom Street LP,
By their attorneys,
/s/: <u>Jeffrey S. Friedman and Brian E. Lutness</u>
Jeffrey S. Friedman ( DE BAR ID: 3193)
Brian E. Lutness( DE BAR ID: 3572)
Silverman, McDonald & Friedman
1010 Bancroft Parkway, Suite 22
Wilmington, DE 19805
302-888-2900 - phone
302-888-2923 -fax

OF COUNSEL
Edward Cochran, Esquire
20030 Marchmont Road
Shaker Heights, Ohio 44122

John Pentz, Esquire
2 Clock Tower Place
Suite 260 G
Maynard, MA 01754

11